[Civ. No. 7658. First Appellate District, Division One.—September 28, 1931.]

MABEL McNEAL et al., Respondents, v. L. O. FOREMAN, Executor, etc., Appellant.

Joe Crider, Jr., John M. Martin and Frank L. Martin, Jr., for Appellant.

Minor Moore, Kyle Z. Grainger and C. V. Caldwell for Respondents.

PARKER, J., *pro tem.*—This action is based on a claim against the estate of Rose Foreman, deceased, filed by plaintiffs, in the sum of nine thousand dollars, alleged to be due for services rendered decedent during her lifetime. Plaintiffs Dodson and Stockton are attorneys at law; plaintiff McNeal is the assignee of one Sloan, a private detective. The action is founded upon a written contract duly executed by Sloan, Dodson and Stockton, as parties of the second part, and Rose Foreman, as party of the first part. The case was tried by the court, sitting without a jury, and judgment went for plaintiffs as prayed. Defendant prosecutes this appeal and as grounds for reversal urges four points, as follows: 1. The plaintiffs failed to affirmatively prove that the contract was fair and reasonable, there being a fiduciary relationship between the parties. 2. The plaintiffs failed to prove the performance or offer of performance of the conditions concurrent. 3. The claim of Mabel McNeal, assignee of Sloan, is barred by section 1498 of the Code of Civil Procedure. 4. The contract as to Sloan, the detective, was invalid as against public policy.

 As to the question of the fairness of the contract under the relationship existing between the parties, little need be said. We may concede that the relationship of attorney and client is one of trust and confidence and that the attorney is bound to the utmost of good faith and conscience in dealings with his client. In the instant case the contract sued upon was executed upon the termination of the service and when nothing further remained to be done in the nature of advice or service; at this point the relationship had wellnigh ended. The rule that where the relation of attorney and client already exists, when a contract is made concerning attorney's fees, the attorney is precluded from recovering more than a reasonable sum without regard to the attempted

fixation of the value of such services by the agreement, is applicable only in special cases, as where special relations of confidence exist or where the client had no other independent advisor, or where the attorney failed to make full disclosure or secured assurance of compensation greater than was previously agreed upon (*Countryman* v. *California Trona Co.*, 35 Cal. App. 728 [170 Pac. 1069] ; *Estate of Mallory*, 99 Cal. App. 96 [278 Pac. 488].)

In the case before us, plaintiffs were eager to open up the question of the fairness of the contract, but were at first precluded by the trial court; subsequently, on motion for nonsuit and the argument following, the court threw open the question at the insistence of plaintiffs and the facts were most fully examined. The exact relationship of the parties was shown; the circumstances surrounding the service rendered and the quality and amount of service, together with the results obtained, were most minutely gone over. As a result thereof the trial court made its finding specifically that the contract between the attorneys and their client was in all respects fair and reasonable; that no fact or circumstance material to the rights of the client was withheld from her; that she was fully apprised of all of her rights with respect to the litigation pending and as to all of her rights against the attorneys prior to the execution of said agreement, and also the facts and circumstances known to counsel. It would serve no useful purpose to detail the facts supporting this finding. No evidence thereon was offered by the defendant and his attack upon the finding consists wholly in an attempt to tear down the case as presented by plaintiffs and to attempt the creation of unfavorable inferences from his reconstructed version thereof. Suffice it to say that the record most amply supports the conclusion of the court below.

In the written agreement it was provided that the parties of the second part should be reimbursed for all expenses incurred and paid, in addition to the payment provided for services. A further clause in the agreement provides: "The parties of the second part acknowledge receipt on this date of Three Thousand ($3000.00) Dollars on account of expenses advanced and incurred. Said parties of the second part further promise and agree to furnish party of the first part with a statement of the total ex-

penses, and a statement of their total receipts since the date of their several employment.'' Appellant contends that this created a condition precedent or at least a condition concurrent and that proof of the compliance by plaintiffs with this provision was essentially a part of both the claim presented and the cause of action thereon. Appellant contents himself with the mention of the point and presents us with no authority in support thereof. By permission of court the original complaint was amended to allege that the plaintiffs and each of them did and performed each and every act required to be performed by them under and by virtue of the terms of the contract. The finding of the court is specific to the point that such allegation is true. This finding is supported by direct evidence to the effect that a complete statement of the total receipts and total expenses was given the deceased. The testimony was received without objection and no motion was made to strike; therefore it stands. (*Kinley* v. *Largent,* 187 Cal. 71 [200 Pac. 937].) After this testimony was in, counsel for plaintiffs proceeded to elaborate on the details, when a discussion arose concerning its admissibility under section 1880 of the Code of Civil Procedure, subdivision 3. No objection of any kind was offered, even at that time; the argument going entirely to the point as to whether or not the requirement was a condition precedent or concurrent. Upon the court's holding that the provisions of the contract were severable, the subject was dropped; the net result of the entire discussion being that the record discloses affirmatively a compliance without contradiction or impeachment.

Further, the agreement on its face provides that plaintiffs were to be reimbursed for all expenses incurred, in addition to the fee agreed upon. They acknowledge that they have already received $3,000, not in settlement of such expenses disbursed, but merely as a payment on account thereof, and obligate themselves that at some future time they will furnish a statement of the total expenses and total receipts. The two matters of fees and expenses were entirely separate. The client by the agreement acknowledges a debt due of $9,000, without deduction or claim of set-off. The payment of the fee is in nowise conditioned upon the rendering of the statement of expense. It seems clear that were the action against the obligee in person, she could not

have defeated the same by merely claiming or showing that the statement of expense had not been rendered. Her remedy or defense would have been by way of set-off or recoupment, showing that plaintiffs were in possession of moneys paid and not accounted for, and she could have then demanded an accounting for and application of the moneys theretofore paid to or received by plaintiffs for expenses. In no sense would the rendition of the statement have been a condition precedent to the maintenance of the action. It is likewise clear that the executor would be in no different position in this respect. He had and has the same rights as his testator in demanding an accounting and in the court below ample opportunity was offered him so to do and he declined.

█ The next point urged by appellant is that the claim of Mabel McNeal, assignee of Sloan, is barred by the provisions of section 1498 of the Code of Civil Procedure. The facts are that Mabel McNeal first presented her claim to the executor for $3,000, which said claim was the individual claim of said Mabel McNeal for the one-third of the amount due the original three parties to the contract. This claim was rejected by the executor and suit was brought thereon within the time allowed by statute. Thereafter the suit was dismissed and the claim withdrawn, the suit being dismissed without prejudice. Thereafter, there was presented to the executor the joint claim sued upon, and this claim being rejected the present suit followed. Section 1498 of the Code of Civil Procedure provides: "When a claim is rejected either by the executor or administrator, or a judge of the superior court, written notice of such rejection shall be given by the executor or administrator to the holder of such claim or to the person filing or presenting the same, and the holder must bring suit in the proper court against the executor or administrator within three months after the date of service of such notice . . . or within two months after it becomes due, otherwise the claim shall be forever barred." It is conceded that the claim, forming the basis of the present action, was presented within the time allowed by statute and notice to creditors.

The contract under which the claim arises is a joint contract. There is no mention therein as to the amount to be apportioned each of the obligees thereto or thereunder. The

claim of Mabel McNeal, as first presented, merely set up that one Sloan had performed certain services of the value of $10,000 and that after deducting payments made thereon there remained due the sum of $3,000. That is the extent of the claim. There is no statement therein that Mabel McNeal is the assignee of Sloan nor any showing of her capacity to make the claim. On its face the claim was not only irregular and informal, but totally without foundation of any sort to support an executor's approval. In *Palmer* v. *Guaranty T. & S. Bank,* 45 Cal. App., at page 577 [188 Pac. 302, 304], it is said: " . . . if a party makes an improper attempt to present a claim to an administrator, particularly where it is so defective as to be insufficient to constitute the basis for a. cause of action, he is not estopped from presenting one in due form, if within proper time, and upon which an action may be based." (Citing *Warren* v. *McGill,* 103 Cal. 153 [37 Pac. 144]; *Westbay* v. *Gray,* 116 Cal. 660 [48 Pac. 800].)

It seems quite clear that the only right or claim that Mabel McNeal may have had against the estate was as the assignee of Sloan. As an individual, without the assignment, she had no claim whatsoever under the contract. It is equally clear that if Mabel McNeal had gone to suit on the first claim and had been unable to prove the assignment, and had thereby suffered a nonsuit, a subsequent procurement of the assignment would have served as the basis for the filing of a separate claim enforceable after rejection without regarding the prior proceedings. The claim as presented, in the absence of any claim of assignment, was insufficient to constitute a basis for any cause of action, coming clearly within the rule of the cited cases permitting the filing of a new claim. The entire scheme of probate looks to the payment of all just debts of the decedent and goes to the extreme in protecting the estate against unjust or unlawful demands. But the law has never gone so far as to penalize, to the extent of his claim, one who through mistake or inadvertence files a claim so lacking in detail as to preclude its allowance.

Lastly, it is urged by appellant that the claim of Sloan, assignor of McNeal, is void as against public policy. As hereinbefore noted, the service rendered by Sloan and for which the compensation is claimed, was service as a

detective. Appellant cites many cases in support of his contention but the same have no application to the facts. There are many contracts wherein a detective agrees to procure evidence of a certain fact, or evidence sufficient to sustain a definite cause of action. These contracts have uniformly come within the ban of the law. But the contract in the present case was of an entirely different character. The following, from *Hare* v. *McGue*, 178 Cal., at page 742 [L. R. A. 1918F, 1099, 174 Pac. 663, 664], most aptly fits the case before us: ''Now, while appellant sets forth quite extensively . . . cases . . . in support of these principles, he does not point out how the particular contracts entered into between the plaintiff and appellant . . . are brought under the ban of the rule, and our examination of the findings and the evidence show no analogy between the facts as recited in the cited cases and the case at bar. Certainly, there is no rule of law which precludes a party in a divorce action or in any other action from employing a person to do detective work or in a divorce action itself to search for witnesses or to procure existing testimony either to support or defend such an action, or to acquire information of the past conduct or life of either spouse, or to set a watch upon the personal acts or associates of either. Anyone has a right when threatened with litigation, or desiring himself to sue, to employ assistance with a view of ascertaining facts as they exist, and to hunt up and procure the presence of witnesses who know of facts and will testify to them, and this is true whether the action be one of divorce or of any other character.''

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 28, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1931.