[Civ. No. 20884.   First Dist., Div. One.   June 11, 1963.]

CHAS. L. HARNEY, INC., Plaintiff and Appellant, v. STATE OF CALIFORNIA, Defendant and Respondent.

Thelen, Marrin, Johnson & Bridges, Edward J. Ruff and Peter Anderson for Plaintiff and Appellant.

Marvin E. Lewis as amicus curiae on behalf of Plaintiff and Appellant.

Stanley Mosk, Attorney General, V. Barlow Goff, Deputy Attorney General, Robert E. Reed, Harry S. Fenton, Kingsley T. Hoegstedt, John W. Anderson and Orrin Finch for Defendant and Respondent.

SULLIVAN, J.—The sole question for our determination on this appeal is whether the instant action brought on a claim against the state for work done and materials furnished for a highway project is barred by the provisions of section 644 of the Government Code. The court below concluded that it was. Plaintiff appeals from an order sustaining a demurrer to its second amended complaint without leave to amend and from the judgment of dismissal entered thereon. "An order sustaining a demurrer without leave to amend is nonappealable, and the appeal must be taken from

the ensuing judgment.'' (*Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8] ; see 3 Witkin, Cal. Procedure, p. 2162.) Plaintiff's attempted appeal from the above order must be dismissed. We review the proceedings below on the appeal from the judgment.

The following short chronology will orient and expedite our examination of the pleadings: In *1955* plaintiff and the defendant State of California, acting through its Department of Public Works, Division of Highways, entered into a written contract, designated by a specific contract number, for the construction of a state highway in Alameda County. On *November 16, 1956,* plaintiff completed the work to be done under said contract. On *April 1, 1959,* plaintiff's claim for additional compensation theretofore filed with the state highway engineer was denied by that official except for the sum of $6,255.70 which he allowed. On or about *May 19, 1959,* plaintiff received but did not cash a State Controller's warrant in the sum of $8,245.21 which included the above amount of $6,255.70 allowed by the engineer, the balance of $1,989.51 relating to other claims not in issue here. On *December 18, 1959,* plaintiff filed with the State Board of Control (hereafter called the Board) its verified claim against defendant (claim No. 13375) on the above contract for payment of $188,-081.18 in addition to the sum of $8,245.21 allowed by the engineer. On *February 9, 1960,* the Board rejected such claim in full. On *October 10, 1960,* plaintiff filed with the Board a second verified claim against defendant (claim No. 13888) for payment of $194,336.88 on the same contract and relating to the same work. This second claim was referred to the Board on *December 6, 1960,* which declined to take any action thereon for the alleged reason that it was identical with claim No. 13375, already rejected. On *March 30, 1961,* plaintiff commenced the instant action.

At the outset we observe that the attack made on plaintiff's pleadings rests entirely on the contention that the facts therein alleged, together with other facts subject of judicial notice, demonstrate that the action is barred by section 644 of the Government Code. It is to be noted that defendant raises no other objection to the sufficiency of the allegations setting forth the contractual relationship of the parties and the circumstances underlying plaintiff's claim for additional compensation. In our summary of the pleadings therefore we

may confine ourselves to those facts alleged or judicially noticed which bear directly on the critical issue.

The original complaint was in six counts. So far as is pertinent here, the first count alleged that during the performance of the contract, the defendant through its Division of Highways issued change and extra work orders which became a part of said contract; that plaintiff completed all the work under the contract and in compliance with its terms and provisions; that as a result of the change orders the cost of the work was materially changed and defendant became indebted to plaintiff in the sum of $188,030.46, no part of which was paid;[1] that in accordance with the contract plaintiff filed its claim for additional compensation with the defendant's engineer; that upon denial of the claim by the engineer on April 1, 1959, *"plaintiff, on December 18, 1959, filed with the State Board of Control of the State of California, . . . a verified statement of claim in the total amount of $196,-326.39, part of which in the sum of $181,774.76 was based in part on some of the facts on which this cause of action* [i.e., the first count] *is based. Thereafter following proceedings had and taken before the State Board of Control, plaintiff's said claim was denied by the State Board of Control on or about February 9. 1960. Thereafter,* on October 10, 1960, *plaintiff* filed a revised verified claim with the State Board of Control in the total sum of $194,336.88, part of which in the sum of $188,030.46 was based on the same facts as are recited in this action; the State Board of Control has refused to take any action on this claim, *stating that it is identical with the claim earlier filed."* (Italics added.)[2]

---

[1] It was alleged that defendant's engineer proposed an adjustment, that said engineer and plaintiff failed to agree on the amount of the adjustment, and that in accordance with the standard specifications, "plaintiff thereby became entitled to be paid on the basis of force account." The above sum of $188,030.46 represented the total of the following items which were also alleged: $103,956.01 for performing the changed work; $17,747.82 for overhead and indirect costs; $42,891.22 for equipment cost; and $23,435.41 for increased costs in placing utilities.

[2] The above $196,326.39 is apparently the sum of $188,081.18 and $8,245.21 "allowed by the Engineer." As we point out *infra,* and as plaintiff concedes, the $8,245.21 included $1,989.51 relating to claims not in issue in this case, leaving a balance of $6,255.70 as the amount actually allowed by the engineer. Thus adjusted, the above $196,326.39 becomes $194,336.88 (or to state it another way, $188,081.18 plus $6,255.70 produces a total of $194,336.88).

We also point out that the above $181,774.76 represents items contained in the first count. Adding to such figure $6,255.70, actually allowed by the engineer, gives the total figure of $188,030.46 also alleged above.

The second through fifth causes of action set forth the facts pertaining to four additional items of work or expense for which plaintiff claims an additional amount of $6,306.42. The second count alleged in paragraph IV thereof, incorporated by reference in all the remaining counts, that the plaintiff filed its claim for the items of the respective counts with defendant's engineer; and that upon denial of the claim by him on April 1, 1959, "plaintiff, *on December 18, 1959 filed with the State Board of Control of the State of California, . . . a verified statement of claim, part of which in the amount set forth in paragraph III, was based on the same facts as those upon which this action is based. Thereafter, following proceedings had and taken before the State Board of Control, plaintiff's said claim was denied by the State Board of Control on or about February 9, 1960. Thereafter, on October 10, 1960, plaintiff* filed with the State Board of Control a revised verified claim, part of which in the sum set forth in paragraph III was based on the same facts as are recited in this action; the State Board of Control has refused to take any action on this claim, *stating that it is identical with a claim earlier filed.*" (Italics added.) The sixth count incorporating by reference specified paragraphs of the preceding five causes, alleged a common count in *indebitatus assumpsit* in the amount of $194,336.88.[3] Judgment was prayed for in such amount.

On July 14, 1961, plaintiff filed an amendment to the complaint as of course, the purported purpose and effect of which was to *delete* therefrom all of the *italicized* allegations set forth above. Defendant's demurrer to the complaint as thus amended was sustained on September 25, 1961, on the ground of uncertainty.[4]

On November 20, 1961, plaintiff filed an amended complaint in six counts, referred to by the parties and hereafter by us, as plaintiff's second amended complaint. This pleading omits all allegations which were deleted from the original complaint by the amendment filed of course. With the exception

---

[3]Thus the first count for $188,030.46, plus the next four counts for $6,306.42, total $194,336.88, the amount claimed in the sixth count and contained in the prayer.

[4]The court's order stated that it was sustained "on the ground of uncertainty for the reason it can not be ascertained from complaint what items in revised claim in total sum of $194,336.88 were disallowed by State Board of Control in an earlier verified claim."

of certain additional allegations which we shall point out, the second amended complaint is practically identical, indeed almost *word for word* so, with the original complaint as amended.

The first count, apart from giving a breakdown of one item of damages claimed,[5] seeks recovery for the same items of damages, totaling the same amount, $188,030.46, as the original complaint. The only substantial change consists in an additional paragraph alleging in substance that on December 18, 1959, plaintiff filed a claim with the Board including the items set forth in the first count "which through error was stated to be in the amount of $181,774.76 as it related to the items stated in said first cause of action"; that said claim also included the items set forth in the second through fifth counts of the second amended complaint; that "[s]aid claim in error credited against the amount of the claims as there made and as sued upon in this complaint, the sum of $6,255.70 which had been earlier offered by defendant's Engineer as an allowance on the basis that such allowance would constitute payment in full of all claims and demands under said contract," and that said claim was rejected in full by the Board.

The above-mentioned additional paragraph is incorporated by reference into each of the remaining six counts. With this exception, such latter counts are the same as the corresponding counts of the original complaint as amended. Counts two through five seek recovery for the same additional items of damages, totalling $6,306.42, the same amount as the original complaint. Count six sets forth a common count for $194,-336.88, the same amount of money as the sixth count of the original complaint. The prayer is for judgment in the sum of $194,336.88, the same amount appearing in the prayer of the original complaint. The second amended complaint, therefore, while referring to the filing and denial of plaintiff's first claim, purports to set forth causes of action brought on plaintiff's second and so-called "revised" claim upon which the Board refused to take action. No copies of either claim are attached to or otherwise incorporated in any of plaintiff's pleadings.

Defendant's demurrer to the second amended complaint

---

[5]The item of $103,956.01 (see footnote 1, *ante*) is realleged but additional allegations state the four subsidiary items of which it is composed. Thus in effect no material change occurs.

asserts that the trial court has no jurisdiction of the subject matter of any of the counts thereof, that each count fails to state facts sufficient to constitute a cause of action, and that each count is uncertain, ambiguous and unintelligible in various particulars. In support of its demurrer, the defendant filed in the trial court and has transmitted here as part of the present record, certified copies of plaintiff's two claims and of other documents relating thereto.[6] It is defendant's position that such official documents of which the trial court took judicial notice together with plaintiff's pleadings in the record, show that the causes of action attempted to be set forth in the second amended complaint have been barred by the statute of limitations. In short, defendant contends that plaintiff's action is of necessity based on the first claim and was not brought within six months after its rejection on February 9, 1960, as prescribed by law. (Gov. Code, § 644.) It is plaintiff's position, on the other hand, that it was correct and proper procedure for plaintiff to file a revised claim with the Board and that plaintiff timely commenced the present action within six months after December 6, 1960, on which date the Board refused to act on the revised claim.

■ At the outset we observe that the trial court and this court have the power to take judicial notice of the official rec-

---

[6]The record contains certified copies of the following documents in the custody of the Board: (a) plaintiff's claim filed December 18, 1959; (b) Board's letter to plaintiff's counsel dated February 11, 1960, advising that said claim was denied on February 9, 1960; (c) plaintiff's second claim filed October 10, 1960; (d) Board's letter to plaintiff's counsel dated December 7, 1960, advising that the second claim was referred to the Board on December 6, 1960, that the Board's records showed an identical claim filed on December 18, 1959, and that "[w]e find no authority in the law for the filing of subsequent claims based on the same facts, where such claims have previously been denied. The Board of Control, therefore, declined to take any action on the above-entitled claim."

The record also contains certified copies of various documents in the custody of the State Controller, the substance of which is to establish the issuance to plaintiff on May 19, 1959, of a warrant in the sum of $8,245.21.

We point out that the foregoing copies of records were also filed in support of defendant's demurrer to the original complaint as amended. However, the Board's records, but not the Controller's records, were refiled in support of the demurrer to the second amended complaint. Since the Controller's documents remain a part of the record, we do not think this circumstance affects the trial court's or our power to judicially notice them. We of course consider them here only in reference to the demurrer to the second amended complaint.

ords and files of the State Board of Control and of the office of the State Controller. (Code Civ. Proc., § 1875, subd. 3; *Dittus* v. *Cranston* (1959) 53 Cal.2d 284, 286 [1 Cal.Rptr. 327, 347 P.2d 671] (records of State Board of Control); *Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184, 210 [5 Cal.Rptr. 553, 353 P.2d 33] (records of Department of Social Welfare and Board of Social Welfare); *Department. of Mental Hygiene* v. *Rosse* (1960) 187 Cal.App.2d 283, 287-288 [9 Cal.Rptr. 589] (official records of Department of Mental Hygiene); *Watson* v. *Los Altos School Dist.* (1957) 149 Cal. App.2d 768, 772-773 [308 P.2d 872] (records of State Board of Education and county planning commission); *Adoption of McDonnell* (1947) 77 Cal.App.2d 805, 808 [176 P.2d 778] (official files of Department of Social Welfare); *McPheeters* v. *Board of Medical Examiners* (1946) 74 Cal.App.2d 46, 47 [168 P.2d 65] (records of said Board); see also *Livermore* v. *Beal* (1937) 18 Cal.App.2d 535, 540-541 [64 P.2d 987].)

The matters to be judicially noticed were properly brought to the attention of the court below by the transmission of certified copies of the records involved. (*Department of Mental Hygiene* v. *Rosse, supra*; *Adoption of McDonnell, supra*.) As stated above, such records are included in the clerk's transcript on appeal. The fact that the instant record does not affirmatively show that the trial court took judicial notice of these records in arriving at its decision does not affect or impair our power to do so. (*Taliaferro* v. *County of Contra Costa* (1960) 182 Cal.App.2d 587, 592 [6 Cal.Rptr. 231].) The record shows that defendant sought such judicial notice. Whether or not the court below exercised such power, we propose to do so.

"That matters judicially noticed may be considered in construing the pleadings is well settled." (*Contractor's Safety Assn.* v. *California Compensation Insurance Co.* (1957) 48 Cal.2d 71, 75 [307 P.2d 626] and cases there collected.)
As was said in *Chavez* v. *Times-Mirror Co.* (1921) 185 Cal. 20, 23 [195 P. 666] "in the consideration of a pleading the courts must read the same as if it contained a statement of all matters of which they are required to take judicial notice, even when the pleading contains an express allegation to the contrary." The rule is therefore well established that a complaint good on its face is nevertheless subject to demurrer when facts not alleged but judicially noticed render it de-

fective. (*Watson* v. *Los Altos School Dist.*, *supra*, 149 Cal. App.2d 768, 771; *Byrne* v. *Harvey* (1962) 211 Cal.App.2d 92, 97 [27 Cal.Rptr. 110].) ▮ Witkin states the reason for such rule: ''The theory is that the pleader should not be allowed to by-pass a demurrer by suppressing facts which the court will judicially notice. The principle is that of *truthful pleading*, and is applied for the same reason as in the similar situation of pleaded exhibits which contradict allegations.'' (2 Witkin, Cal. Procedure, Pleading, § 208, p. 1185; original emphasis.) We therefore proceed to examine plaintiff's second amended complaint in the light of the above-mentioned official files and records of which we take judicial notice in order to determine whether they render the pleading defective.

Plaintiff's first claim (No. 13375) filed with the Board on December 18, 1959, states that claimant ''makes claim . . . in the sum of $188,081.18'' arising out of a specified construction contract, giving its contract number and description. We note that they are the same as the number and description appearing in the second amended complaint. The claim states that a claim had previously been presented to the state engineer and rejected by him on April 1, 1959, ''except for the sum of $6,983.51 which was allowed. . . .'' The above is the same date alleged in the pleadings. Further statement is made that the claim is based on increased costs resulting from the issuance of change orders. It is then stated that as a result the claimant is entitled ''to receive payments for work performed under the contract as set forth below, in addition to amounts heretofore paid or allowed by the State.'' The items and amounts ''set forth below'' are : (a) seven items corresponding in description to the seven items set forth in the first count of the complaint and second amended complaint, and totalling $181,774.76; (b) six items which although in different combinations are set forth in the second through fifth counts and total $6,306.42. Finally, it is stated that there is due, owing and unpaid ''by reason of the foregoing the sum of $188,081.18, in addition to the sum of $8,245.21 which was allowed by the Engineer.'' This makes a total of $196,-326.39.

As already pointed out (see fn. 2, *ante*) after the exclusion of $1,989.51 not involved in the case, the foregoing total is actually $194,336.88. When the amount of $6,255.70 actually allowed by the engineer is taken into account, the total of

all items in both claims and in all pleadings is the same.[7]

Claim No. 13375 was rejected by the Board on February 9, 1960. Plaintiff took no action of any kind with respect to such claim until October 10, 1960, more than eight months later, when plaintiff filed with the Board its second and so-called revised claim in the same amount of $194,336.88.

Plaintiff's second claim (No. 13888) is on the same contract as that described and numbered in the first claim. Like the first claim, it is entitled "Claim on Construction Contract." It is not denominated a "revised" or "amended claim." It states at the outset that the claimant (plaintiff) "makes claim . . . in the sum of $194,336.88." Similarly to the first claim, it states that the cost of work was materially increased as the result of the engineer's change orders and that plaintiff is entitled to be paid the following amounts: for performing certain changed work specified in the claim $103,956.01; for overhead $17,747.82; for equipment costs $42,891.22; and for increased costs in placing utilities $23,435.41. The total of these items is $188,030.46.[8] Thereafter the claim sets forth

[7]Plaintiff's first claim totals the following:

| | |
|---|---|
| First seven items | $181,774.76 |
| Next six items | 6,306.42 |
| Total | $188,081.18 |
| Allowed by engineer (adjusted) | 6,255.70 |
| Total | $194,336.88 |

[8]From the description of the pertinent items, it appears that the sum of $103,956.01 refers to the first four items which were separately stated in the first claim. Thus the total amount sought to be recovered for these same items in each claim is identical, as can be seen from the following:

| Item | Claim No. 13375 | Claim No. 13888 |
|---|---|---|
| Roadway Excavation | $ 60,005.01 | |
| Water | 15,020.84 | |
| Gravity Wall | 15,025.83 | $103,956.01 |
| Concrete | 9,280.37 | |
| Field Overhead | 17,747.82 | 17,747.82 |
| Equipment Costs | 42,891.22 | 42,891.22 |
| Utilities | 21,803.67 | 23,435.41 |
| Total | $181,774.76 | |
| Previously allowed by engineer (as adjusted) | 6,255.70 | |
| Total | $188,030.46 | $188,030.46 |
| Remaining six items | 6,306.42 | 6,306.42 |
| Total | $194,336.88 | $194,336.88 |

the same additional six items of expense set forth in the first claim, totalling the same amount of $6,306.42. The total of $188,030.46 and $6,306.42 is $194,336.88. Nowhere does such claim state in any way that it is a revised claim.

The second claim contains an "alternative statement of claim" the effect of which is to incorporate by reference paragraphs setting forth the last six items totalling $6,306.42 and to reallege the items totalling $188,030.46. The amount claimed remains the same. The claimant prays the Board for payment of $194,336.88. As we have pointed out, the Board "declined to take any action" on this second claim.[9]

In addition, the records of the State Controller's office disclose the issuance to plaintiff on May 19, 1959, of a warrant in connection with the above contract, as well as others, in the sum of $8,245.21. In its brief, plaintiff concedes it has not cashed such warrant because, as plaintiff alleges in the additional paragraph introduced in its second amended complaint, such amount had been offered by the engineer on the basis it would constitute payment in full for all claims and demands under the contract. However the warrant itself has not been brought before us and it does not appear that the above or similar conditions appear thereon. It is to be noted that plaintiff does not so allege but alleges only the sum of $6,255.70 "had been earlier offered by defendant's Engineer as an allowance on the basis" that it would constitute payment in full.

Our examination of the foregoing claims and other records leads us to the following conclusions: (1) Both the first claim and the second claim pertain to the same construction contract, the same extra work, and the same items of cost. (2) Both claims involve the same amount of money, item for item, except that the first claim treats $6,255.70 as allowed by the engineer and seeks payment of the balance. (3) The total amount involved for the items of costs and damages is the same ($194,336.88) except that the first claim treats $6,255.70 as allowed and seeks payment of the balance, while the second claim seeks payment of the entire amount. (4) The second amended complaint alleges items of costs and damages which item for item and in the aggregate are the same as in the second claim.[10]

---

[9] See fn. 6, *ante.*

[10] The seven items alleged in the first count total $188,030.46. (See fn. 8, *ante.*) The items alleged in counts two through five (although differently

■ An action may be brought against the State of California only in the manner and within the time allowed by statute. (Cal. Const., art. XX, § 6; *Yasunaga* v. *Stockburger* (1941) 43 Cal.App.2d 396, 401 [111 P.2d 34]; *Parker* v. *County of Los Angeles* (1943) 62 Cal.App.2d 130, 134 [144 P.2d 70].) ■ Where the right to bring suit against the state is granted, the state may impose conditions as a prerequisite to the commencement of any action against it (*Fidelity & Deposit Co.* v. *Claude Fisher Co.* (1958) 161 Cal.App.2d 431, 436-437 [327 P.2d 78]) and place limitations upon the enforcement of such action (*Vinnicombe* v. *State of California* (1959) 172 Cal.App.2d 54, 56 [341 P.2d 705]). ■ The conditions imposed by statute as a prerequisite to an action against the state, while not always jurisdictional (see *Spence* v. *State of California* (1961) 198 Cal.App.2d 332, 335-336 [18 Cal.Rptr. 302]), are mandatory and must be strictly complied with (*Fidelity & Deposit Co.* v. *Claude Fisher Co., supra; County of Los Angeles* v. *Riley* (1942) 20 Cal.2d 652, 662 [128 P.2d 537]; *Yasunaga* v. *Stockburger, supra*).

Accordingly, recovery has been denied when conditions prerequisite to an action against the state have not been satisfied as, for example, where claims for indemnity for slaughtered cattle condemned under the Bovine Tuberculosis Law were not accompanied by an affidavit of an officer of the Department of Agriculture when presented to the State Controller and State Board of Control (*Lertora* v. *Riley* (1936) 6 Cal.2d 171, 179-182 [57 P.2d 140]) or where a claim against the state was not presented to the Board within the time provided by law (*Yasunaga* v. *Stockburger, supra*, 43 Cal.App.2d 396; *Fidelity & Deposit Co.* v. *Claude Fisher Co., supra*, 161 Cal.App. 2d 431) or where an action on a claim was prematurely commenced before its rejection and no undertaking required by Government Code section 16047 (now § 647) was furnished in connection therewith (*Vinnicombe* v. *State of California, supra*, 172 Cal.App.2d 54).

■ Recovery will also be denied where, other prerequisites having been satisfied, legal action is not brought against the state within the period prescribed by statute. (See *County of San Luis Obispo* v. *Gage* (1903) 139 Cal. 398 [73 P. 174].) ■ As the court said in *Fidelity & Deposit Co.* v. *Claude Fisher Co., supra*, 161 Cal.App.2d 431, 437:

grouped) are the same in amount and total ($6,306.42) as the corresponding items of the claim.

"Statutes of limitation and the like, prescribing definite periods of time within which actions may be brought or certain steps taken are, of necessity, adamant rather than flexible in nature. Such statutes are upheld and enforced regardless of personal hardship [citation], and they are favored by the courts [citation]. These are elementary propositions but their application to the instant litigation makes plain the fundamental weakness of appellant's case."

Section 641 of the Government Code provides in relevant part that "[a]ny person who has a claim against the State . . . on express contract . . . shall present the claim to the board in accordance with section 621. If the claim is rejected or disallowed by the board, the claimant may bring an action against the State on the claim and prosecute it to final judgment, subject to the conditions prescribed by this article."

▮ Section 644 of such code provides: "A claim not arising under sections 17000 to 17003, inclusive, of the Vehicle Code shall be presented to the board within two years after the claim first arose or accrued. An action on such a claim shall be brought within six months after the claim is rejected or disallowed in whole or in part."

Section 645 of such code provides in relevant part that if such claim "is rejected or is allowed only in part, an action may be maintained only on the portion of the claim rejected or disallowed."

The commencement of an action against the state on a rejected claim within the above period of limitations is mandatory. The statute plainly states that "[a]n action on such claim *shall* be brought" (italics added) within the prescribed period and the code expressly declares that the word "shall" is mandatory. (Gov. Code, § 14.) ▮ It seems abundantly clear to us therefore that when plaintiff's first claim was rejected by the Board on February 9, 1960, the above statute of limitations was immediately set in motion. No action having been commenced within six months of the rejection of plaintiff's claim on February 9, 1960, the cause of action on the claim became barred.

However plaintiff contends that its instant action is brought not on the first claim but on the second and alleged "revised" claim, that the second claim was filed within the two-year period prescribed by section 644 and that the action thereon was commenced on March 30, 1961, and therefore

within six months of December 6, 1960, when the Board declined to take action on such claim. The flaw in this argument is that, as the records judicially noticed show and as we have explained above, the second claim is identical with the first claim. In presenting its first claim in December 1959, plaintiff sought payment of $188,081.18 in addition to the sum of $6,255.70 previously allowed by the engineer[11] and for which sum it had received a Controller's warrant several months before. As already noted, the total of these amounts is $194,336.88. Thus plaintiff took the position that part of its claim had been allowed and sought payment of the balance. In presenting its second claim, plaintiff merely claimed the above total of $194,336.88. The two claims involved the same contract, the same items of work, and the same amounts of money. Indeed this is apparent not only from an examination of the claims themselves (see fn. 8, *ante*) but from the allegations of plaintiff's second amended complaint. In the new paragraph included therein plaintiff alleges, as we have already noted, that it filed with the Board on December 18, 1959, "a claim including each of the items" set forth in the first count "which through error was stated to be in the amount of $181,774.76. . . ." We have already shown that this last amount plus the $6,255.70 allowed by the engineer and covered by the warrant totals $188,030.46, which is the same total for the same items in the second claim upon which the instant action is purportedly brought. In the same paragraph of the second amended complaint as above-mentioned, it is also alleged that the claim filed on December 18, 1959 (the first claim) "also included each of the items and in the same amounts as sued upon the second, third, fourth and fifth causes of action of this complaint." We have already shown that the total of these items in the sum of $6,306.42 is identical in both claims and all pleadings.

We feel therefore that when plaintiff's first claim was rejected on February 9, 1960, the statute of limitations was set in motion and plaintiff was powerless to suspend its operation or extend the six months' period of limitations by filing the *same* claim *again*. In our view, such an act would fly in the face of the very conditions imposed by the state in granting the right to bring suit against it. Much less could plaintiff file an identical claim after the statute had

---

[11]To avoid confusion we use the adjusted figure in lieu of $8,245.21 as stated in the claim.

run. Accordingly, we conclude that when plaintiff filed its second claim in October 1960, the cause of action on which it was predicated had already been extinguished on August 9, 1960.

To avert this impact of the statute plaintiff next contends that in the absence of cases arising under section 644 resolving the instant problem, we should apply precedents dealing with creditors' claims in probate and holding that the statute of limitations runs from the rejection of a second claim. Plaintiff's position may be stated as follows: That there being no restrictive language therein, section 644 should be construed to permit the presentation to the Board of a revised claim after the rejection of a prior claim where the prior claim is "defective" or of "doubtful sufficiency" in which event the statute of limitations would start running from the rejection of the revised claim and not from the rejection of the prior claim. To support such a position, it is argued that a compelling analogy exists between actions on rejected claims under Government Code section 644 and actions on rejected claims in probate under Probate Code section 714; and that despite the language of limitation[12] found in the latter section, revised probate claims have been permitted and have thus effectuated a postponement of the statute of limitations. Plaintiff refers us to the following authorities: *Stark* v. *McAllister* (1944) 65 Cal.App.2d 577 [151 P.2d 162]; *Warren* v. *McGill* (1894) 103 Cal. 153 [37 P. 144]; *Palmer* v. *Guaranty Trust & Sav. Bank* (1920) 45 Cal. App. 572 [188 P. 302]; *McNeal* v. *Foreman* (1931) 117 Cal. App. 155 [3 P.2d 583].

We do not find the analogy as compelling as plaintiff would have it and are not persuaded that the above cases are dispositive of the problem before us. In our view plaintiff's cited cases represent not a general rule but exceptions evolving from a liberal construction of rules in probate. As we shall point out, we do not believe such particularistic holdings should be applied as instruments of construction in respect to section 644 and in any event to the facts alleged and judicially noticed in the instant case.

---

[12]Probate Code section 714 provides in part that after rejection and written notice of rejection of a claim, the claimant "must bring suit in the proper court against the executor or administrator, within three months after the date of service of such notice if the claim is then due, or, if not, within two months after it becomes due; otherwise the claim shall be forever barred."

We find the general probate rule to be, as stated in *Gillespie* v. *Wright* (1892) 93 Cal. 169, 171 [28 P. 862], that when a creditor of the decedent has presented his claim and had it rejected, he may not again present his claim for the same demand and thus avoid the bar of the statute or prolong the time within which he may commence suit. Undeniably the rule is not absolute as plaintiff's cases indicate. Thus in *Stark* v. *McAllister, supra,* 65 Cal.App.2d 577, on which plaintiff relies heavily, the court formulated the rule of the *Gillespie* case as precluding the extension of the statute of limitations ''by the later presentation of a second claim based upon the same transaction and merely varying from the first in form or detail.'' (P. 579.) It then held that the filing of a second creditor's claim in probate on an account stated for $1,700 was not prevented by the filing of an earlier claim as an account stated for $1,800 because the second ''differed from the first in a matter of substance[13] rather than one of form or detail only'' (p. 579) and ''was necessary to correct the first in a material particular'' (p. 581). However it is apparent that the nucleus of the opinion is a liberal constructional principle : ''Our courts have been liberal in permitting the filing of second claims where the first claim filed was materially defective [citations] and a like liberality is shown in other jurisdictions [citations].'' (P. 580.) In support of the foregoing the court cited *inter alia Palmer* v. *Guaranty Trust & Sav. Bank* and *McNeal* v. *Foreman,* both of which plaintiff cites here. In all of these cases the courts have relaxed the general rule because of the existence of a material defect in the first creditor's claim : a different basic agreement (*Stark* v. *McAllister, supra; McNeal* v. *Foreman, supra*) ; or a claim ''never read to or seen by . . . [claimant], and . . . largely incorrect'' (*Warren* v. *McGill, supra,* 103 Cal. 153, 155) ; or a claim ''so defective as to be insufficient to constitute the basis for a cause of action'' (*Palmer* v. *Guaranty Trust & Sav. Bank, supra,* 45 Cal.App. at p. 577). (See generally 20 Cal. Jur.2d, Executors and Administrators, § 597 ; 21 Cal.Jur.2d, Exec-

---

[13]The small difference in amount is misleading. The court reasoned that it was essential to an account stated that the parties have agreed on an exact amount and that the first claim therefore did not describe the agreement of the parties. ''It no more describes the transaction upon which the claim is intended to be based than a claim for the sale of a cow would describe a transaction based on the sale of a horse, . . .'' (65 Cal. App.2d at p. 579.)

utors and Administrators, § 1089.) No such material defect existed in plaintiff's first claim in the instant case.

However our unwillingness to apply the above precedents here rests upon a more basic consideration. In our view there is a fundamental difference between the presentation of probate claims and of claims against the state. As we have pointed out (see authorities, *supra*) the prosecution of the latter claims must proceed in the manner and within the time provided by statute and after strict compliance with the requisite conditions imposed by the state. The provisions of the Government Code here applicable and set forth above make no mention of the amendment of claims against the state. We are not presented with and need not decide the question whether such a claim may be amended within the statutory filing period and *before* it is acted upon by the Board. No California case has been cited or found which deals with the amendment of such a claim within the statutory filing period but *after its rejection* by the Board.

Our research discloses the case of *Smith* v. *Board of Supervisors* (1893) 99 Cal. 262 [33 P. 1094] involving a similar factual situation relating to a claim against a county. In *Smith* the first claim was presented to and rejected by the board of supervisors. The claimant then filed within the proper time a second claim based on the same contract upon which the board refused to act, on the ground that the same claim had already been rejected. Judgment ordering a writ of mandate compelling action on the second claim was affirmed on the ground that the claims were materially different.[14] The court said: "Upon a careful inspection of the first claim presented, we are not prepared to say that upon its rejection by the board of supervisors it was sufficient upon its face, even aside from the lack of the certificate of the superintendent of construction, to support an action for the recovery of a judgment of five thousand five hundred dollars from the county, to be paid in warrants at par drawn upon the fund known as the first Road District Fund of San Bernardino County. Those were the provisions of the contract, and the claim should have been sufficiently full and explicit to form the basis of such an action." (99 Cal. at p. 264.)

---

[14]The first claim failed to have attached to it the required certificate of the superintendent of construction and asked payment by warrants drawn on the general fund of the county rather than on a road district fund specified in the construction contract.

However the opinion in the *Smith* case does not disclose the provisions of the claim statute or ordinance there applicable or give any indication as to what, if any, language it contained with respect to the time to bring suit after the rejection of a claim. Nevertheless, assuming without conceding that *Smith* announces a rule, of wide general application to the presentation of claims in general, that a second claim may be presented where it is "materially different," we do not believe such rule is applicable in the instant case because this plaintiff's claim was not materially different.

We thus face a narrow issue. We do *not* have here and need not decide whether a claim presented to the Board may be amended *before* the Board acts. Nor do we have a situation where a second claim presented after the rejection of the first is in substance a different claim from the first. Nor do we have a situation where the validity of a claim having been questioned because of an alleged failure to comply with statutory prerequisites is attempted to be sustained by the claimant upon the "doctrine of substantial compliance." (See *Knight* v. *City of Los Angeles* (1945) 26 Cal.2d 764, 766-767 [160 P.2d 779], and cases there collected. ▮▮▮ We must therefore decide whether the Board having once rejected the first claim can consider the second which is substantially if not identically the same. We have concluded that it cannot. We feel that our reasons for such conclusion also point up the basic difference above adverted to between the instant claims and claims in probate.

The State Board of Control is an administrative board in the state government consisting of the Director of Finance, the Controller, both ex officio, and a third member appointed by and serving at the pleasure of the Governor. (Gov. Code, § 13901.) It must keep a record of all of its proceedings (Gov. Code, § 13904) ; a majority of the board constitutes a quorum for the transaction of business (Gov. Code, § 13906) ; it has the power to make rules and regulations (Gov. Code, § 13920) which have the effect of law *(Lertora* v. *Riley, supra,* 6 Cal.2d 171, 180), the purpose of which is "to establish an orderly procedure by which the Legislature would be advised of claims against the State in instances where no provision had been made for their payment" *(Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 347 [144 P.2d 818]) ; it has the power to conduct investigations, inquiries and hearings and to make findings, opinions

and orders (Gov. Code, § 13908) ; it has specified duties with respect to the audit of claims (Gov. Code, § 16020 et seq.) ; and its meetings are open and public (Gov. Code, § 13912). It is in short an administrative board exercising quasi-judicial powers. (*Hammel* v. *Neylan* (1916) 31 Cal.App. 21 [159 P. 618] ; cf. *McConoughey* v. *Jackson* (1894) 101 Cal. 265, 268 [35 P. 863].)

When a claim against the state is presented to the Board, the settlement of which is not otherwise provided for by law, "[n]otice of the time and place of the hearing shall be mailed to the claimant at least 15 days prior to the date set for *final* action by the board" (Gov. Code, § 621; italics added). Official records of the Board filed with us at oral argument show and we take judicial notice that promptly upon the filing with the Board of plaintiff's first claim on December 18, 1959, the Board called plaintiff's attention to section 621 and subsequently plaintiff through its consel advised the Board that it would not appear at the hearing on February 9, 1960, when such claim was finally rejected.[15] The record at this point of time gives no indication of any intention on plaintiff's part to file a revised claim.

Although it is apparent that a general rule cannot be stated for all administrative agencies and although there is a conflict of authorities among the different jurisdictions (see 73 A.L.R. 2d 939), it has been held in California as a principle of administrative law that, where no specific authority is conferred by statute, an administrative board or agency has no inherent or implied power to reopen or reconsider a final decision and exhausts its jurisdiction when it announces such decision. (*Heap* v. *City of Los Angeles* (1936) 6 Cal.2d 405 [57 P.2d 1323] ; *Olive Proration etc. Committee* v. *Agricultural Prorate Com.* (1941) 17 Cal.2d 204 [109 P.2d 918] ; see generally 73 A.L.R.2d 939.) In *Heap* it was held that a civil service commission had no power to vacate its order discharging an employee made pursuant to a charter provision specifying such an order as "final and conclusive." In the absence of an express grant of power the commission possessed no inherent

[15]The Board's letter dated December 22, 1959, included the following: "Should you desire action upon this claim without hearing, please so advise." Plaintiff's counsel in their letter dated February 2, 1960, stated: "This is to advise you that no appearance will be made on behalf of Charles L. Harney, Inc. at the hearing before the Board of Control on February 9, 1960."

power to entertain a motion for new trial or rehearing or to review or set aside its order. Stating that the existence of any such power raised questions as to how, when and how frequently it could be exercised, the court observed "how unsafe and impracticable would be the view that a commission might upset its final orders at its pleasure, without limitations of time, or methods of procedure." (*Heap* v. *City of Los Angeles, supra,* 6 Cal.2d at p. 408.) In *Olive Proration* it was held that the Agricultural Prorate Advisory Commission, in the absence of a specific grant of authority, had no power to make an order which rescinded a previous order denying a petition to terminate an olive proration program. The court there said: "The statute contains no provision in express terms giving the commission authority to change its considered determination, made after a full hearing, and the fact that any order made by it may be reviewed in a judicial proceeding to be commenced within 30 days after its effective date is some evidence of legislative intention to the contrary. And since all administrative action must be grounded in statutory authority, in the absence of a provision allowing a commission to change its determination, courts have usually denied the right so to do." (*Olive Proration etc. Committee* v. *Agricultural Prorate Com., supra,* 17 Cal.2d at p. 209.)

Applying the above principles to the case before us, we are of the opinion that when the Board denied plaintiff's first claim on February 9, 1960, it exhausted its jurisdiction and possessed no further power to reconsider or rehear the claim.[16] The required procedure of presenting and considering the claim had been followed and "final action" (Gov. Code, § 621) had been taken thereon. This brought into play the related statutes (Gov. Code, § 644) providing for judicial review and imposed on the claimant the absolute requirement that such review be sought by legal action brought within six months thereafter. To hold that such action may be commenced within six months after the Board refused to take action on the second claim, would be in effect to say, in disregard of the foregoing principles, that the Board did not exhaust its jurisdiction and that a second claim, similar to the first, could be employed as an application for a rehearing and a device to extend the statute of limitations. We believe such

---

[16]No power of reconsideration was derived from the Administrative Procedure Act (Gov. Code, § 11500 et seq.) since the State Board of Control is not one of the enumerated agencies to which such act is made applicable (Gov. Code, § 11501, subd. (b)).

a procedure would not only be unwarranted in the light of the applicable statutes but, if followed, would be disruptive of the orderly presentation, consideration and review of claims against the state.

Plaintiff urges that the permissibility of revised claims appears from a comparison of Government Code sections 606[17] and 644. It is argued that because a claim filed with the Controller and once rejected can be reconsidered by him only if grounds exist as specified in section 606, whereas no similar provisions are found in section 644, a legislative purpose is shown to allow revised claims under section 644. Plaintiff cites *People* v. *Valentine* (1946) 28 Cal.2d 121 [169 P.2d 1] and *Lambert* v. *Conrad* (1960) 185 Cal.App.2d 85 [8 Cal.Rptr. 56] as supportive of the rule that the omission in one statute of a provision found in another statute on a related subject is evidence of a different legislative intention. However, we do not agree with plaintiff's application of the rule. We think that, if it is the basis of any conclusion here, it is that the Board has no power to entertain for a second time a claim once rejected by it, whether any grounds existed or not.

Plaintiff next contends that the second claim is not identical with the first. As we have already set forth, a comparison of the two claims shows that they involve the same contract, the same extra work and the same items of cost. The first claim sought payment of $188,081.18 "in addition to the sum of $8,245.21 previously allowed by the Engineer." Actually the portion of $8,245.21 pertaining to the contract here involved was $6,255.70, making a total of $194,336.88, the exact amount for which recovery was sought in the second claim for the same items of work. In the first claim plaintiff takes the position that $6,255.70 was allowed. In the second, it makes no mention of the allowance. Nevertheless in fact the claims are identical.

Plaintiff argues that the second claim eliminated matters in the first "which could have caused said claim to be held legally insufficient." This argument rests on the allegation found in the second amended complaint (but not in the original complaint) that the first claim in error gave credit

[17]Government Code section 606 provides: "The Controller shall not entertain for a second time a claim against the State once rejected by him or by the Legislature unless such facts are subsequently presented to the board as in suits between individuals would furnish sufficient ground for granting a new trial."

for the $6,255.70 which had been offered by the engineer on the basis that it would constitute payment in full. Plaintiff's argument then runs as follows: that it received a Controller's warrant for the amount allowed but did not present it for payment; that if suit had been brought on the first claim "the State could have argued that, by *alleging* in the claim . . . that it had given credit for these allowances, Plaintiff had *accepted* the conditions of the warrant and thereby waived the entire claim" (original emphasis); that, as a result, the first claim was incorrect in substance and legally insufficient; and finally that the second claim eliminated the above "possible legal defense of payment in full."

Contrary to plaintiff's argument, an examination of the *first* claim in the instant record discloses that it does *not* state an accord and satisfaction. In such claim the plaintiff alleges that " [t]here is now due, owing and unpaid to Claimant from the State of California, by reason of the foregoing the sum of $188,081.18, in addition to the sum of $8,245.21 which was allowed by the Engineer." Nowhere in such claim is there any allegation that the above amount was allowed by the engineer on the basis that it would constitute payment in full. The claim merely states that a specified amount had been allowed by the engineer. We fail to see how this statement made the claim "legally insufficient." The purpose of the claim was to recover a specified amount ($188,081.18) in addition to the amount allowed. The claim was therefore sufficient in itself for the amount so specified.

The "possible legal defense" of accord and satisfaction which plaintiff professes to avoid relates to a consideration which we think is *independent of the first claim,* namely whether plaintiff accepted *part* payment as payment *in full.* As we mentioned earlier, a "payee index form" in the present record shows that a Controller's warrant for $8,245.21 was issued to plaintiff on May 19, 1959, approximately seven months before plaintiff filed its first claim. Although plaintiff in its brief concedes that it received but did not cash the warrant, plaintiff's second amended complaint is devoid of any allegations relating to the warrant. Nowhere do we find in the record the conditions of the warrant which plaintiff fears it would be charged with accepting. Despite plaintiff's avowed purpose of avoiding a possible legal defense of accord and satisfaction by filing a "revised" claim, we find no allegations in the pleading that plaintiff returned the warrant issued on

May 19, 1959, either prior to filing its second claim with the Board on October 10, 1960, or commencing the instant action on March 30, 1961, or filing its second amended complaint on November 20, 1961.[18] In our view on the pleading before us, if there was any possible defense of accord and satisfaction, it could be asserted against the second claim as well as against the first.

Thus plaintiff's reliance on *Paulson* v. *Ward County* (1912) 23 N.D. 601 [137 N.W. 486, Ann.Cas. 1914D 822, 42 L.R.A. N.S. 111] is misguided. In *Paulson* the complaint alleged the total amount of the services furnished, the amount allowed and sought recovery for the balance. The court there held that the pleading of the issuance of the warrant and in effect its acceptance amounted to the pleading of an accord and satisfaction. The holding that "the acceptance of the warrant operated as an accord and satisfaction" (137 N.W. at p. 487) even if it were, as plaintiff would have it, applicable to the instant case, would preclude recovery on the second claim as much as the first. (Cf. *Western Pacific Land Co.* v. *Wilson* (1912) 19 Cal.App. 338, 343 [125 P. 1076]; see generally 13 A.L.R.2d 736.)

We conclude that the claims were identical, that plaintiff did not transform their fundamental characteristics by positing different theories of recovery, and that in any event plaintiff could not use the device of a revised claim to revive a cause of action already extinguished when the revised claim was filed.

Finally we observe that plaintiff's second amended complaint is defective in a very basic respect. Section 641 of the Government Code which requires the presentation of a claim to the Board in the instant situation also states: "*If the claim is rejected or disallowed* by the board, the claimant may bring an action against the State on the claim and prosecute it to final judgment, subject to the conditions prescribed by this article." (Italics added.) Section 644 provides that an action on such a claim "shall be brought within six months *after the claim is rejected or disallowed* in whole or in part." (Italics added.) The above provisions clearly show that rejection or disallowance of a claim has been

---

[18]The second or "revised" claim is similarly deficient. Nowhere is there any reference therein that it is revised or that it purports to amend a former claim. It contains no allegations bearing on the warrant which had been received 17 months earlier.

made a condition precedent to the commencement of an action against the state thereon. ▮ It is the general rule that where the rejection of a claim is a prerequisite to suit, the claim does not ripen into a cause of action until such rejection, the statute of limitations does not begin to run until such event, and the commencement of any action prior to rejection is premature. (*Spencer* v. *City of Los Angeles* (1919) 180 Cal. 103, 119 [179 P. 163]; *Southern Pacific Co.* v. *City of Santa Cruz* (1914) 26 Cal.App. 26, 29-30 [145 P. 736]; cf. *Vinnicombe* v. *State of California, supra,* 172 Cal.App.2d 54, 55.) ▮ Nowhere in the pleading before us is there any allegation that plaintiff's so-called revised claim has been rejected or disallowed. Nor could there be any in the light of this record. Since the second amended complaint does not contain such an allegation, it fails to set forth facts sufficient to constitute an action on a *rejected* claim, quite apart from the other considerations already mentioned.

Plaintiff contends that the defendant cannot rely on the failure of the Board to disallow the second claim since "a party cannot defeat a cause of action by insisting on the performance of something which he himself refuses to do." However the Board is not a party to the instant action but, as we have pointed out, an independent administrative body in the state government. (Gov. Code, § 13900 et seq.) ▮ Continued wrongful refusal to act on a claim before it does not leave the claimant remediless, since in a proper case such refusal is controllable by mandamus. (45 Cal.Jur.2d, State of California, § 95, pp. 464-466; cf. *Brite* v. *Board of Supervisors* (1937) 21 Cal.App.2d 233, 235 [68 P.2d 1007]; *Hammel* v. *Neylan, supra,* 31 Cal.App. 21, 28.) ▮ Failure or refusal to act upon the claim is not the equivalent of its rejection or disallowance.

The attempted appeal from the order sustaining the demurrer to the second amended complaint without leave to amend is dismissed. The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 7, 1963.