[Civ. No. 22941.   Second Dist., Div. One.   June 19, 1958.]

FIDELITY AND DEPOSIT COMPANY OF MARYLAND (a Corporation), Plaintiff; STATE OF CALIFORNIA, Respondent, v. CLAUDE FISHER COMPANY, LTD. (a Corporation), Appellant.

Leon J. Garrie for Appellant.

Robert E. Reed, Harry S. Fenton, Robert F. Carlson and William S. Ashton, Jr., for Respondent.

LILLIE, J.—The action herein arises out of a highway construction contract between appellant Claude Fisher Company and the State of California entered into on February 5, 1951. On April 8, 1952, appellant's work was terminated by the state and the balance of the project was completed by another contractor. The Fidelity and Deposit Company, surety on Fisher's construction bond, paid the state the sum of $163,421.79 on the bond and thereafter instituted the present action against the Claude Fisher Company to recover the amount paid. The Claude Fisher Company then filed a cross-complaint against the Fidelity and Deposit Company and the State of California, which is denominated: "Cross-

Complaint For Declaratory Relief, Monies Due On Contract, And Damages For Breach Of Contract.'' Thereafter the state made a motion to dismiss on the ground that the court lacked jurisdiction because the claim upon which the action was brought was not presented to the State Board of Control within two years after the claim first arose or accrued, as required by section 16044 of the Government Code. There is no dispute as to the various steps taken or their respective dates.

The gist of appellant's cross-complaint is that the state had failed to facilitate the work involved in the construction contract, delayed work thereon and prevented the contractor from diligently prosecuting the same. It is particularly alleged that the contract required the state to furnish all necessary rights of way; adequate working room and a proper site in which to work; that it was obligated to remove obstructions and obstacles from the right of way, including certain utility transmission towers, prior to March 15, 1951, and that it was required to have the route and right of way adequately surveyed and marked at all times. Appellant further alleged that the state failed to perform such obligations and that it unreasonably delayed the work through the spring months, as a result of which the Claude Fisher Company was forced to perform grading work in the wet, winter months at increased costs resulting in damages. Appellant charged that as a result of such breaches of contract, its ''financial resources and credit were seriously depleted, whereupon on or about the last week in March, 1952 cross-complainant did treat said construction contract as terminated as a result of the aforementioned acts on the part of the cross-defendant STATE OF CALIFORNIA''; and that thereafter the state terminated cross-complainant's work and relet the contract to another contractor.

The cross-complaint then averred a contract provision to the effect that within 30 days after completion of the work and its acceptance by the Director of Public Works, the state engineer should make and submit to the contractor a proposed final estimate of work done under the contract and the value thereof; that 30 days thereafter cross-complainant should submit to the engineer its written approval of such estimate, or a written statement of all claims for additional compensation under the contract, after which a semifinal estimate should be made and submitted by the engineer and that the amount found due should be paid within 30 days. It is

further alleged that the state engineer failed to submit a final estimate within the required 30-day period, but that on May 18, 1953, the state notified Fisher to submit its claim to the engineer, which it did on June 22, 1953. The claim was denied by the engineer on August 10, 1955, except as to the sum of $9,607.69, which amount cross-complainant refused to accept. It did not file its claim with the State Board of Control until February 21, 1956. This claim was denied on July 27, 1956.

No answer to the cross-complaint was filed but the state made the motion to dismiss here under discussion. In opposition thereto, the Claude Fisher Company maintained that the claim did not accrue until August 10, 1955, when the state engineer made his valuation of the amount purportedly due it and denied its demand for the damages subsequently set forth in the claim. Using this date appellant's claim, filed with the State Board of Control on February 21, 1956, would be within the statutory two-year period.

█ Appellant's first contention is that the lower court had no authority to dismiss the cross-complaint and that the filing of an answer by the state was a prerequisite to the filing and granting of such motion under section 437c of the Code of Civil Procedure, as it existed prior to September 11, 1957, the effective date of an amendment which allows the filing of a motion to dismiss prior to the filing of an answer.

The respondent's answer to this argument is that by virtue of its inherent power to prevent abuse of judicial process, a court has authority to grant a (speaking) motion to dismiss based upon uncontroverted facts showing that the action has no merit. Apropos this same matter, respondent further maintains that even though there may have been a procedural error in the court's dismissal of the action on motion rather than by demurrer, such an error cannot be deemed reversible if a general demurrer would have been sustained without leave to amend.

█ In reference to the so-called "speaking motions," referred to by respondent as precedents for the motion to dismiss in the present case, the Supreme Court has this to say in *Pianka* v. *State,* 46 Cal.2d 208, 211 [293 P.2d 458] : "However, nonstatutory speaking motions have now been superseded by the procedure governing motions for summary judgment contained in section 437c of the Code of Civil Procedure. This section was originally very limited in scope, but it has been broadened by a series of amendments and now applies

'in any kind of action' and . . . all types of proceedings. . . . The remedy afforded by this section is broad enough to cover all situations in which speaking motions have been employed, and there is therefore no longer any need for the nonstatutory procedure. In the interests of orderly and efficient administration of justice, the litigant should be required to employ the statutory remedy, and a speaking motion to dismiss should be treated as a motion for summary judgment in order to preserve the safeguards provided by the statute.''

Assuming, without deciding, that the respondent's motion to dismiss was not strictly or technically proper, such error, if any, must be considered nonprejudicial since it is clear from the record that the same result would have ensued had the matter been presented in some other manner. The very fact utilized as the basis for the motion to dismiss, that the claim against the state was presented to the State Board of Control on February 21, 1956, more than two years after the cause of action arose, is definitely pleaded in appellant's cross-complaint and hence was a matter appearing on the face of the cross-complaint. Proper procedure is always to be desired and encouraged but dereliction in this respect is not necessarily fatal.

The language of the reviewing court in *Stafford* v. *People*, 144 Cal.App.2d 79, 81 [300 P.2d 231], is applicable to the instant controversy: ''But regardless of any questions of procedure in the trial court they are of no moment on the appeal if they did not prevent a full and fair disposition of matters in issue or result in harm to plaintiff. (Code Civ. Proc., § 475; Const. art. VI, § 4½, 4 Cal.Jur.2d 499).''

In this connection it is interesting to note that, in the lower court, appellant did not see fit to raise any question about the propriety of respondent's use of the motion to dismiss. Apparently the entire matter was duly argued and considered upon its merits. Regardless of the fact that no answer to the cross-complaint had been filed by respondent, all claims of the respective parties were clearly before the court.

Actually, the real question is: Was appellant entitled to successfully wage its claim against the state, or was such claim barred by its failure to present it to the State Board of Control within two years after the claim arose or accrued, as required by section 16044 of the Government Code? This section expressly provides that ''A claim not arising under section 400 of the Vehicle Code *shall* be presented to the

board within two years after the claim first arose or accrued.'' (Emphasis added.) Section 14 of the Government Code declares that the word ''shall'' is mandatory.

·· The chronology of the successive steps taken in the instant case is not in dispute. The contract between the Claude Fisher Company and the state was entered into on February 5, 1951; on April 8, 1952, appellant's work was terminated by the state and the project completed by another contractor. The completed work was accepted by the state on February 26, 1953. On May 18, 1953, the state notified appellant to file its claim with the state engineer, which was done on June 22, 1953, and amplified by appellant on February 26, 1954. Appellant's claim was denied by the engineer on August 10, 1955, except as to the sum of $9,607.69 which appellant refused to accept. Not until February 21, 1956, did the Claude Fisher Company file its claim with the State Board of Control, which claim was denied by the board on July 27, 1956.

Appellant's contention is that it was not at fault in failing to file its claim with the board of control at an earlier date and that under the contract submission of its claim to the state engineer was a condition precedent to filing the claim with the board. Under this theory, appellant's actual claim would not accrue until the engineer had made his decision on August 10, 1955. In this connection, appellant argues that since the state directed it to submit the claim to the state engineer, ''both parties construed the contractual provision regarding determination by the engineer as applying; and that such construction being a reasonable one should be so construed by the Court.''

The appellant urges that by reason of the facts the state is estopped from asserting that the contract provisions in question are not applicable because appellant did not complete the contract and that the appellant is now barred from legal redress because of the delay which ensued. Appellant insists that the motion to dismiss its cross-complaint is an improper attempt to repudiate the state's own interpretation of the contract and to benefit by its own delay.

Although superficially, appellant's argument might seem to suggest plausible merit, a consideration of the entire situation dispels any such view. Basically, the attempt is to excuse its own failure to comply with a definite statutory provision and to lay any or all fault at the feet of the state. Conditions imposed by a state as a prerequisite to an action against it are jurisdictional in nature and must be

strictly complied with. (*State* v. *Superior Court,* 14 Cal.App. 2d 718 [58 P.2d 1322].) ■ Statutes of limitation and the like, prescribing definite periods of time within which actions may be brought or certain steps taken are, of necessity, adamant rather than flexible in nature. Such statutes are upheld and enforced regardless of personal hardship (*Beck* v. *Ransome-Crummey Co.,* 42 Cal.App. 674, 680 [184 P. 431]), and they are favored by the courts *(Seid Pak Sing* v. *Barker,* 122 Cal.App. 93 [10 P.2d 92]). These are elementary propositions but their application to the instant litigation makes plain the fundamental weakness of appellant's case.

■ It must be assumed that the Claude Fisher Company was, from the beginning, fully informed with respect to the mandatory provisions of section 16044 of the Government Code requiring the filing of a claim within two years after it first arose or accrued, and that an action on such claim shall be brought within six months after rejection. Appellant was likewise fully informed as to the facts. If appellant, with this knowledge, elects to ignore the plain provisions of the law and to take a chance at some ultimate settlement or other happy determination, it must, like all litigants, accept the consequences of its action.

The appellant's cross-complaint alleges certain breaches of contract on the part of the state in not removing utility transmission towers prior to March 15, 1951, etc., and affirms that "on or about the last week *in March, 1952 cross-complainant did treat said construction contract as terminated* as a result of aforementioned act on the part of the cross-defendant STATE OF CALIFORNIA." (Emphasis added.) Since the appellant's cross-complaint alleges breach of contract on the part of the state, allegations indicating that appellant at that time considered the contract at an end for all purposes can hardly be overlooked in considering when its claim arose.

Or, if the date of completion of the job and acceptance by the state be taken as the crucial date, it appears that appellant's claim was not presented to the board of control until nearly three years later. Again, if appellant's allegations of fraud on the part of the state be considered as a basis for the cause of action, appellant must have had knowledge of any false representations at least by the last week in March, 1952. In whatever light the matter be considered, there seems to have been no proper compliance with the statutory provisions prescribing the time for filing appellant's claim.

The argued suggestion that any default on appellant's part stems from the respondent's misleading conduct is not persuasive. The principles of estoppel, appropriately applied to certain inequitable situations, may sometimes furnish a proper excuse for dilatory action and it is certainly true that a governmental body should not be permitted to lead another party into a trap and then benefit from its own misconduct. But the doctrine of estoppel is not an omnibus defense, nor is it one which will automatically afford relief where an unfortunate situation is but the result of a party's own dereliction. ■ As set forth in 18 California Jurisprudence 2d, pages 406-407, "four things are essential to the application of the doctrine: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." ■ To reiterate these well-established essentials is to refute any claim of estoppel in this case. Certainly the appellant was never in ignorance of the true facts, nor are the other elements of the doctrine here established. Of importance is the pronouncement of the court in *Pacheco* v. *Clark*, 44 Cal.App.2d 147, 153 [112 P.2d 67]: "The doctrine of estoppel where the state is involved should not be lightly invoked."

Section 16044 of the Government Code definitely prescribes the period for presentation of claims to the board of control; it contains no exceptions applicable to the present situation, nor is it elastic in nature. Such being the case, it is pointless to speak of some contemporaneous interpretation of the contract which would serve to nullify or extend its provisions. Likewise, the right of a contractor to payment where such contractor's control over the work has been terminated, as was the case in the instant controversy, is fully and definitely covered by section 14399 of the Government Code.

Incidentally, it may be noted that insofar as appellant's allegations of breach of contract are concerned, any such cause of action must have come into being, if ever, long before, and independent of any determination of the cost of completing the job by the state. There should be no confusion between these two matters. Nor is the situation made more favorable to appellant's cause by the prayer for declaratory relief.

It is fundamental and elementary that pleadings are to be construed as a whole. The same is true of contracts and of

statutes. Likewise, in many cases, an over-all consideration of the entire picture viewed from a reasonable distance is helpful. In the present case, viewed from any angle and regardless of the specific legal theory invoked, appellant's contentions must be deemed without merit. The matters now urged by appellant seem to have been quite fully canvassed on the motion to dismiss and there is nothing in the record to indicate that the decision violated any of the established principles of either law or equity.

The order is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied July 14, 1958, and appellant's petition for a hearing by the Supreme Court was denied August 13, 1958. Schauer, J., was of the opinion that the petition should be granted.