[Civ. No. 34984. First Dist., Div. One. July 18, 1975.]

SUNKIST GROWERS, INC., Plaintiff and Appellant, v.
MATSON NAVIGATION COMPANY, Defendant and Respondent.

**COUNSEL**

Hall, Henry, Oliver & McReavy and John E. Droeger for Plaintiff and Appellant.

David F. Anderson, Peter P. Wilson and David V. Ainsworth for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—The appeal before us concerns the one-year limitation for commencement of an action against a carrier for loss or damage to goods received for shipment by sea, found in the "Carriage of Goods by Sea Act." (46 U.S.C.A. §§ 1300-1315 [46 U.S.C.S. §§ 1300-1315] inclusive; hereafter sometimes the "act.")

The limitation provision is found in section 1303(6), of the act, and it reads as follows: "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods *or the date when the goods should have been delivered:* . . ." (Italics added.)

On an agreed statement of facts the superior court entered summary judgment, based upon this statute of limitations, in favor of defendant Matson Navigation Company. Plaintiff Sunkist Growers, Inc. appeals from the judgment.

The agreed statement of facts, as relevant, follows:

"1. Plaintiff is a corporation which on November 25, 1969 delivered to Defendant at Wilmington, California 5540 containers of citrus fruit for transportation from Wilmington to Honolulu, Hawaii.

"2. Defendant was on November 25, 1969 and is today a corporation principally engaged in the common carriage by water of cargo between the Pacific Coast of the United States and Hawaii. Cargo is usually delivered to a Hawaiian consignee by Defendant in seven to ten days after the cargo is delivered to Defendant in Wilmington.

"3. The cargo which is the subject of this cause of action was not transported from Wilmington to Honolulu pursuant to the contract. Rather, the cargo was redelivered from Defendant to Plaintiff at Wilmington after February 2, 1970. Had the cargo been transported pursuant to the contract, it would have been delivered to Plaintiff in Honolulu on approximately December 5, 1969.

"4. Plaintiff filed suit in this Court on February 2, 1971."

In its appellate brief, plaintiff elaborates upon the facts appearing in the settled statement. We do not consider such matter which was not

before the superior court, and which is no part of the record before us. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 218, p. 4208.)

It will be noted from the settled statement that the cargo of citrus fruit "should have been delivered" to Hawaii on or before December 5, 1969, and that plaintiff's action was filed more than one year after that date. On the other hand, defendant's return of the cargo to plaintiff, the shipper, in Wilmington after February 2, 1970, was within one year of the commencement of the action.

Plaintiff contends that the *redelivery* of the citrus fruit to it by defendant at Wilmington, although contrary to the contract for carriage to Hawaii, was the "delivery of the goods" contemplated by the act. It follows, it is argued, that the action filed within one year of such redelivery was timely.

Defendant maintains that the act's reference to "delivery of the goods" means delivery of the cargo, according to the contract of carriage, or the bill of lading, at the point of destination, here Hawaii. Such a delivery having never been made, it insists that the critical point of time was the date when the cargo "should have been delivered" in Hawaii.

█ We have concluded that the contention of defendant is the correct one, and that the superior court properly entered summary judgment in favor of that party.

The court in *States Steamship Co.* v. *American Smelting & Refining Co.*, 339 F.2d 66 (cert. den., 380 U.S. 964 [14 L.Ed.2d 155, 85 S.Ct. 1109]), considered the act's requirement that an action for loss or damage to cargo be "brought within one year after delivery of the goods or the date when the goods should have been delivered." The court held (p. 68): "The wording compels the conclusion that said provision was intended to apply only to claims which relate directly to a *breach of a carrier's duty to make timely delivery of the goods in good order and condition.*" (Italics added.) After consideration of relevant authority the court stated (pp. 68-69): "The cases are not at variance with this view. The limitation provision of Section 3(6) has been applied mainly to instances involving damage directly to the cargo. *It has also been applied where there has been delay in, or failure of, delivery or departure.* See Commercio Transito Internazionale, Ltd. v. Lykes Bros. Steamship Company, 243 F.2d 683 (2d Cir. 1957); Badhwar v. Colorado Fuel and Iron Corp., 138 F.Supp. 595 (S.D.N.Y. 1955), aff'd, 245 F.2d 903 (2d Cir. 1957), cert. denied, 355

U.S. 862, 78 S.Ct. 95, 2 L.Ed.2d 68 (1957); Singer Hosiery Mills of New York v. Cunard White Star, Ltd., 199 Misc. 389, 102 N.Y.S.2d 762 (1951); Albert Isbrandtsen Company, 7 Misc.2d 67, 160 N.Y.S.2d 772 (1957). In the above cited cases the damage arose directly from and was related directly to a failure to·make a proper delivery of the cargo owner's goods." (Italics added.)

The application of the act's statute of limitations "where there has been delay in, or failure of, delivery or departure," is wholly inconsistent with its being tolled until some indefinite point of time when the goods might be returned to the shipper at the port of the ship's actual or contemplated departure.

In the case at bench defendant had failed to make "timely delivery of the goods" to the cargo's consignee in Hawaii. The act's one-year statute of limitations (§ 1303(6)) accordingly commenced running on the day when the "goods should have been delivered," which was no later than December 5, 1969.

Other authority has similarly concluded. Speaking of the act's statute of limitations, it was said in *Zifferer* v. *Atlantic Lines, Ltd.,* 278 F.Supp. 736, 739-740: "The one year time for suit clause is of the greatest importance. The suit must be brought within one year, even if the carrier fails to comply with his obligations under the law and the contract." The obvious meaning is that upon the carrier's failure to comply with its contract of safe carriage either because of damage to, or failure to deliver, the goods, the term of the statute commences running.

This construction is consistent with the principle that it is the contract, or bill of lading, between the shipper and carrier that determines their respective rights and liabilities. Upon delivery of damaged goods, or failure to timely deliver the goods, at their agreed-upon destination in contravention of the contract of carriage, the statute must reasonably commence its operation. "The bill of lading, required to be issued by the initial carrier upon an interstate shipment, 'governs the entire transportation and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid.' " (*Galveston Wharf Co.* v. *Ry. Co.,* 285 U.S. 127, 134-135 [76 L.Ed. 659, 664, 52 S.Ct. 342].) And as said in *A. M. Collins & Co.* v. *Panama R. Co.,* 197 F.2d 893, 897 (cert. den., 344 U.S. 875 [97 L.Ed. 677, 73 S.Ct. 168]): "All parties concerned with a negotiable ocean bill of lading, the carrier, the shipper, the consignee, the discounting bank, and the insurance

underwriter, are alike interested not so much in the method as in the *result* to be achieved, the delivery of the cargo at the port of destination in good condition. The bill of lading contract with the carrier covers that completed service from the time of loading of the goods to their discharge from the ship. *The extent of liability of the carrier and of other persons performing that service under the carrier does not depend upon the means adopted but is governed by the contract covering the entire service."* (Italics partially added.)

■ Statutes of limitations "must necessarily fix *definite* periods of time." *(California Sav. etc. Soc. v. Culver,* 127 Cal. 107, 110 [59 P. 292]; italics added; see also *Chas. L. Harney, Inc. v. State of California,* 217 Cal.App.2d 77, 90-91 [31 Cal.Rptr. 524]; *Fidelity & Dep. Co. v. Claude Fisher Co.,* 161 Cal.App.2d 431, 437 [327 P.2d 78].) Under the construction contended for by plaintiff, where goods are undelivered at their destination when they "should have been delivered" the one-year statute of limitations would ordinarily commence running. But then upon their redelivery to the shipper at some future time at the port of original shipment (or perhaps elsewhere) the statute which had run, in whole or in part, would commence anew, obviously a quite unreasonable result. "It is the duty of the courts, whenever possible, to interpret statutes so as to make them workable and reasonable." *(City of Santa Clara v. Von Raesfeld,* 3 Cal.3d 239, 248 [90 Cal.Rptr. 8, 474 P.2d 976].)

■ We accordingly hold that the statute of limitations of the act, found in 46 United States Code Annotated section 1303(6) [46 U.S.C.S. § 1303(6)], commences running on the date of delivery of the goods or on the date the goods should have been delivered, at their destination, according to the bill of lading or other contract for their carriage.

The summary judgment is affirmed.

Molinari, P. J., and Weinberger, J.,* concurred.

A petition for a rehearing was denied August 15, 1975, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.