Filed 11/1/22 Camrock v. Security Paving CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CAMROCK CO., INC., | C091102 |
| Plaintiff and Respondent, | (Super. Ct. No. 34201600198773CUBCGDS) |
| v. | |
| SECURITY PAVING COMPANY, INC., | |
| Defendant and Appellant. | |

Prime contractor Security Paving Company, Inc. (Security Paving) appeals from a judgment entered in favor of subcontractor Camrock Co., Inc. (Camrock) after a court trial.[1]  Camrock sued Security Paving for breach of contract and common counts, alleging nonpayment for construction work on two state highway projects for the California Department of Transportation (Caltrans).  Security Paving defended the action

---

[1] Camrock was previously known as Camrock Company.  The name change is not relevant to any issue on appeal.

on the ground that Camrock's causes of action were barred by the applicable statutes of limitations. The trial court rejected Security Paving's statutes of limitations defense and entered judgment in Camrock's favor. Security Paving appeals, arguing the trial court erred in determining the accrual date of the applicable statutes of limitations and entered an excessive damage award, which was not supported by substantial evidence. We reject both contentions and affirm the judgment.[2]

## I. BACKGROUND

In December 2010, Security Paving entered into a contract with Caltrans to perform construction work on a state highway in Kern County (the 06 Project). In October 2011, Security Paving entered into a second, separate contract to perform work in Los Angeles County (the 07 Project). Camrock acted as a subcontractor to Security Paving on both the 06 Project and the 07 Project.

A.    *The 06 Project*

Security Paving and Camrock entered into a written subcontract on a standard subcontract form for the 06 Project in January 2011 (the 06 subcontract). The 06 subcontract called for Camrock to reconstruct metal beam guard rails along a state highway. Camrock's scope of work included removing wooden posts along an existing metal beam guard railing spanning approximately two miles and replacing them with metal posts. The cost to complete Camrock's work was $310,050. However, the 06 subcontract was a unit price contract, meaning that Camrock could be paid more or less than $310,050, depending on the actual quantities installed.

Camrock began work on the 06 Project in late August 2011. At the time, Security Paving was already behind schedule and incurring liquidated damages penalties with

---

[2] Because we affirm the judgment, we have no occasion to consider Security Paving's request for contractual attorneys' fees as a prevailing party.

2

Caltrans at the rate of $3,000 per day. These penalties would eventually become the subject of an arbitration between Security Paving and Caltrans.

Within days of starting work, Camrock discovered that many of the existing wooden posts along the highway had not been installed to the required depth of three feet. Most were only two and one-half feet deep, and some were only one foot deep, most likely due to the rocky terrain. Camrock promptly notified Security Paving that installing new metal posts at the required depth of three feet would involve drilling through surface and subsurface rocks and boulders, which would be more difficult and expensive. Around the same time, Caltrans submitted two change orders (change order no. 1 and change order no. 2), enlarging Camrock's scope of work and increasing the contract price. Camrock requested another change order for extra work resulting from the unexpectedly rocky site conditions. Caltrans rejected Camrock's request.

Camrock submitted a notice of differing site conditions to Security Paving. Security Paving submitted the notice to Caltrans on Camrock's behalf. Caltrans denied the claim. Caltrans informed Security Paving that the existence of surface and subsurface rocks was obvious and should have been considered by Camrock at the time of bidding. Caltrans also asserted that Camrock's claim was untimely, and therefore, waived. Security Paving did not tell Camrock that Caltrans had rejected the claim, and consequently, Camrock would not be paid for the extra work.

B.     *The 07 Project*

Security Paving was awarded the contract for the 07 Project in September 2011. Security Paving then approached Camrock about performing additional work on the 07 Project. By then, Camrock had been working on the 06 Project for approximately two months.

Security Paving and Caltrans entered into a second, separate subcontract with Camrock for the 07 Project (the 07 subcontract). The 07 subcontract called for Camrock to remove 4,090 linear feet of double metal beam guard railing near the Tejon Pass for

3

$6.50 per foot. The terms of the 07 subcontract were set forth on the same standard subcontract form used for the 06 subcontract. However, the parties were not sure whether they signed the form, and no signed 07 subcontract was ever offered into evidence.

Camrock began work on the 07 Project in late October 2011 and completed work in early November 2011. Caltrans paid Security Paving for the 07 Project in late November 2011. Camrock submitted an invoice for the 07 Project in early January 2012. Security Paving did not pay the invoice. Camrock filed a stop notice with Caltrans for $26,580 on March 15, 2012. Camrock was not paid for its work on the 07 Project.

## C.     *Camrock's Termination and Substitution from the 06 Project*

Camrock resumed work on the 06 Project in November 2011, after completing the 07 Project. As before, Camrock experienced difficulties associated with the rocky terrain. Camrock kept Security Paving and Caltrans informed of these issues.

On December 12, 2011, Security Paving sent a letter declaring that Camrock was in breach of the subcontract for the 06 Project and demanding that the subcontractor complete work by December 15, 2011. Camrock responded that it would not be able to meet that deadline.

On December 16, 2011, Security Paving sent Camrock a letter terminating the subcontract for the 06 Project. Security Paving also sent Caltrans a letter requesting substitution of Camrock. By then, Camrock had completed a substantial portion of work on the 06 Project.

Camrock objected to the substitution. A substitution hearing was held in February 2012. The substitution was approved on February 16, 2012. Camrock was not paid for its work on the 06 Project.

## D.     *Arbitration Between Caltrans and Security Paving*

Caltrans and Security Paving became involved in arbitration concerning the imposition of liquidated damages penalties for the 06 Project. The arbitration claim was

4

eventually settled. As part of the settlement, Caltrans made a final payment to Security Paving of $144,000 for the 06 Project. That payment was made on October 14, 2014. Camrock was never informed of the final payment to Security Paving, the result of the arbitration between Security Paving and Caltrans, or the disposition of its own claims for payment.

E.      *Complaint, Cross-Complaint, and Court Trial*

Camrock commenced the present action on August 11, 2016. Camrock's Judicial Council form complaint asserts causes of action for breach of contract and common counts against Security Paving.

The complaint attaches a copy of the 06 subcontract. The complaint alleges Security Paving breached the 06 subcontract by failing to pay Camrock's final invoice for the 06 Project dated August 9, 2012. The complaint seeks damages in the amount of $356,436 for the 06 Project.

The complaint also alleges Security Paving breached the 07 subcontract by failing to pay Camrock's final invoice for the 07 Project dated February 3, 2013. The complaint seeks damages in the amount of $26,585 for the 07 Project.

Security Paving answered the complaint and asserted numerous affirmative defenses, including the statutes of limitations. Security Paving also filed a cross-complaint for breach of contract, indemnity, and fraud. The cross-complaint alleges Camrock failed to perform as required by 06 and 07 subcontracts. The cross-complaint seeks damages in the amount of $610,110. Camrock answered the cross-complaint, asserting various affirmative defenses including unclean hands, estoppel, and the failure to do equity.

The matter was tried before the trial court over the course of several days beginning in October 2018 and continuing through March 2019. The parties' representatives testified substantially as described *ante*. An expert witness for Camrock additionally testified that a subcontractor called upon to replace existing wooden posts

5

along a state highway could reasonably assume they had been installed to the required depth of three and one-half feet, such that removing and replacing them would not require any significant excavation or drilling. The expert witness further opined that delays in Camrock's performance were the result of differing site conditions, which were beyond Camrock's control, and which Camrock timely brought to Security Paving's attention. The expert witness further opined that Security Paving had an obligation to submit and timely file Camrock's claim with Caltrans, and pursue the claim through arbitration, if necessary.

The trial court issued a tentative decision in Camrock's favor on May 31, 2019. Security Paving requested a statement of decision. The trial court issued a 24-page statement of decision on July 1, 2019. As relevant here, the trial court found: "The statute of limitations did not commence under the written contract until Security Paving and Caltrans concluded their arbitration and Security Paving received the final $144,000 payment from Caltrans. That date was October 14, 2014." The trial court found support for this determination in section 4 of the 06 subcontract, entitled "PAYMENT SCHEDULE." That section provides, in pertinent part: "CONTRACTOR agrees to pay SUBCONTRACTOR in monthly payments of 100% of labor and materials which have been placed in position and for which payment has been made by OWNER [Caltrans] to CONTRACTOR." The same language can be found in the unsigned 07 subcontract.

The trial court further found: "To the extent the Court's award of damages is based upon quantum meruit, the Court finds that as a result of its conduct, Security Paving is estopped to assert the statute of limitations and/or that Security Paving has waived the defense of the statute of limitations." The trial court awarded Camrock $318,355 for the 06 Project ($560,959 for amounts due pursuant to the subcontract and change orders, less $242,604 in offsets), and $19,565 for the 07 Project ($26,585 for amounts due pursuant to the subcontract, less $7,020 in offsets).

6

Security Paving objected to the trial court's statement of decision. As relevant here, Security Paving objected that the statement of decision failed to address the factual and legal bases for the trial court's determination that the statutes of limitations started running when Security Paving received the final payment from Caltrans. The trial court entered judgment on September 23, 2019, incorporating the statement of decision and awarding Camrock $337,920 in damages, exclusive of attorneys' fees and costs. Security Paving moved for a new trial, arguing the damage award for Project 06 was excessive and unsupported by the evidence. The trial court denied the motion and subsequently entered an award of contractual attorneys' fees in Camrock's favor in the amount of $66,007. This appeal timely followed.

## II. DISCUSSION

### A.  Statute of Limitations

Security Paving contends the trial court erred in concluding Camrock's causes of action for breach of contract and quantum meruit were timely filed. The parties agree that: (1) the statute of limitations applicable to Camrock's cause of action for breach of the 06 subcontract is four years for breach of a written contract (Code Civ. Proc., § 337, subd. (a) [four year statute of limitations applicable to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing"]);[3] and (2) the statute of limitations applicable to Camrock's cause of action for quantum meruit or breach of the unsigned 07 subcontract is two years under section 339 (§ 339, subd. (1) [two-year statute of limitations applicable to "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing"]; see also *Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Ins. Co.* (2016) 2 Cal.App.5th 1218, 1223). The parties also

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

7

agree on the general timeline of events. The parties only disagree as to when Camrock's causes of action accrued.

When a cause of action accrues is generally a question of fact we review for substantial evidence or, where the underlying facts are not in dispute or susceptible of more than one legitimate inference, a question of law we review independently. (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 607.) But because the statute of limitations is an affirmative defense, on which the defendant has the burden of proof (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 945), the standard of review is more deferential to the judgment (*Dryer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838). Where the appellant has failed to meet his or her burden of proof at trial, " 'the question for the reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law' " because " 'the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Ibid.*; see *Lent v. California Coastal Com.* (2021) 62 Cal.App.5th 812, 837-838 [applying this standard to the defense of laches]; *Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 647 [applying this standard to the defenses of waiver and estoppel].) The appellant in this situation faces an " 'almost impossible' " burden. (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.)

*1.     06 Subcontract*

The trial court concluded Camrock's cause of action for breach of the 06 subcontract accrued on October 14, 2014, when Security Paving received its final payment from Caltrans. Security Paving argues the cause of action accrued on December 16, 2011, when Camrock was terminated from the 06 Project. We conclude Security Paving has not carried its " 'almost impossible' " burden of showing the evidence compels a finding in its favor as a matter of law. (*Atkins v. City of Los Angeles, supra,* 8 Cal.App.5th at p. 734.)

8

The statute of limitations for breach of a written contract "is four years from the time the claim accrues." (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341.) A cause of action for breach of contract "accrues at the time of breach, which then starts the limitations period running." (*Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120; see also 3 Witkin, Cal. Procedure (6th ed. 2022) Actions § 567(1) [same].) "[A] breach of contract ordinarily occurs upon the promisor's *failure to render the promised performance.* Therefore, to pinpoint the time of an alleged breach for purposes of the statute of limitations, it is necessary to establish what it was the defendant promised to do, or refrain from doing, and *when its conduct diverged* from that promise." (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 958.)

Security Paving was found to have breached the 06 subcontract by failing to pay for Camrock's work on the 06 Project. The breach occurred, and the cause of action accrued, when Security Paving became obligated to pay Camrock, but failed to do so. (*McCaskey v. California State Automobile Assn., supra,* 189 Cal.App.4th at p. 958.) The trial court understood the 06 subcontract to embody a promise by Security Paving to pay Camrock upon receiving payment from Caltrans. Such a promise can be found in several places in the 06 subcontract.

The 06 subcontract provides: "CONTRACTOR agrees to pay SUBCONTRACTOR for the strict performance of his work, the sum of: THREE HUNDRED TEN THOUSAND FIFTY DOLLARS AND NO CENTS . . . ($310,050.00) (UNIT PRICES APPLY) subject to additions and deductions for changes in the work as may be agreed upon, and to make payment in accordance with the Payment Schedule, Section 4." Section 4, in turn, provides: "CONTRACTOR agrees to pay SUBCONTRACTOR in monthly payments of 100% of labor and materials which have been placed in position and for which payment has been made by OWNER to CONTRACTOR."

9

The trial court relied on section 4 to conclude Camrock's cause of action accrued on October 14, 2014, when Security Paving received its final payment from Caltrans. Security Paving questions the trial court's reliance on section 4; however, the court could have easily relied on other provisions of the subcontract to reach the same conclusion. For example, the 06 subcontract elsewhere provides: "Camrock . . . SHALL be paid within 10 days after Prime Contractor gets paid by owner." The 06 subcontract's termination for cause provision similarly contemplates that Security Paving's obligation to pay Camrock comes into being when Security Paving receives payment from Caltrans. The 06 subcontract provides: "In the event this Agreement is terminated for cause, SUBCONTRACTOR shall not be entitled to receive any further payment until the work undertaken by CONTRACTOR in his prime contract is completely finished. At that time, if the amounts earned but not paid SUBCONTRACTOR before said termination exceed the expenses incurred by CONTRACTOR in finishing SUCONTRACTOR'S work, any excess shall be paid by CONTRACTOR to SUBCONTRACTOR; but, if such expense shall exceed the said amount earned and unpaid, SUBCONTRACTOR shall promptly pay to CONTRACTOR the amount by which the expense exceeds said sum." We need not decide which of these payment provisions apply, since all of them contemplate that Security Paving's obligation to pay arises upon receiving payment from Caltrans.[4]

---

[4] During oral argument, Security Paving's counsel suggested Camrock's entitlement to payment is governed by section I of the 06 subcontract. That argument is not clearly developed in the opening brief and could be considered forfeited. But even assuming the argument were properly before us, we would reject it. Section I, entitled "Termination of Agreement," addresses various termination scenarios, only one of which is relevant here. Specifically, section I provides: "SUBCONTRACTOR shall not be entitled to receive any further payment until the work undertaken by CONTRACTOR in his prime contract is completely finished." Nothing in section I suggests Security Paving's payment obligation accelerates upon termination of the 06 subcontract. Security Paving's reliance on section I is misplaced.

Security Paving does not offer any evidence suggesting that the obligation to pay came into existence any time before October 14, 2014.[5]  Security Paving instead argues Camrock's cause of action accrued on December 16, 2011, when Security Paving terminated the 06 subcontract.  But this argument ignores the nature of the breach.  Camrock does not allege any termination-based breach of the 06 subcontract.  Camrock only alleges a breach based on Security Paving's failure to pay.  That breach, as we have said, occurred on the date Security Paving acquired a legally enforceable obligation to pay Camrock.  (See *Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 488 ["A cause of action for breach of contract does not accrue before the time of breach"]; *Taylor v. Johnston* (1975) 15 Cal.3d 130, 137 ["There can be no *actual* breach of a contract until the time specified therein for performance has arrived"].)  In the absence of any evidence that the termination of the 06 subcontract somehow accelerated Security Paving's payment obligation (and Security Paving offers none), we conclude the statute of limitations does not run from the termination date.

*Fidelity & Deposit Co. v. Claude Fisher Co.* (1958) 161 Cal.App.2d 431 (*Fidelity & Deposit*), on which Security Paving relies, does not change our conclusion.  Security Paving offers *Fidelity & Deposit* for the proposition that a terminated contractor's cause of action for breach of contract necessarily accrues on the date of termination.  That case announces no such rule.

*Fidelity & Deposit* arose out of a highway construction contract between the State of California (the State) and contractor Claude Fisher Company (Fisher).  (*Fidelity & Deposit, supra,* 161 Cal.App.2d at p. 432.)  The State terminated Fisher's contract, and the project was completed by another contractor.  (*Ibid.*)  Fisher submitted a claim to the

---

[5] Security Paving argues section 4 specifies the time for payment but does not establish Camrock's right to be paid. This is a distinction without a difference in the circumstances of this case.

state highway engineer, which was denied. (*Id.* at p. 434.) Fisher then submitted a claim with the State Board of Control, which was also rejected. (*Ibid.*) The Fidelity & Deposit Company, surety on Fisher's construction bond, paid the State on the bond and sued Fisher. (*Id.* at p. 432.) Fisher cross-complained against the State. (*Ibid.*) The State moved to dismiss the cross-complaint on the ground that the claim upon which the action was brought was not presented to the State Board of Control within two years, as required by section 16044 of the Government Code. (*Id.* at p. 433.) The trial court granted the motion and Fisher appealed, arguing the two-year statute of limitations did not begin to run until the state highway engineer rejected the claim. (*Id.* at pp. 434-435.)

The Court of Appeal affirmed, noting the cross-complaint alleged breaches of contract by the State prior to the date of termination. (*Fidelity & Deposit, supra,* 161 Cal.App.2d at p. 437.) Among other things, Fisher alleged the State breached an obligation to remove obstacles and obstructions from the right of way, including certain utility transmission towers. (*Id.* at p. 433.) As a result, the cross-complaint alleged, Fisher " 'did treat said construction contract as terminated.' " (*Ibid.*) The court observed: "Since the appellant's cross-complaint alleges breach of contract on the part of the state, allegations indicating that appellant at that time considered the contract at an end for all purposes can hardly be overlooked in considering when its claim arose." (*Id.* at p. 437.) The court noted that "insofar as appellant's allegations of breach of contract are concerned, any such cause of action must have come into being, if ever, long before, and independent of any determination of the cost of completing the job by the state." (*Id.* at p. 438.) The court concluded Fisher's cause of action for breach of contract arose on or before the date Fisher treated the contract as terminated for all purposes, and not the date the state highway engineer rejected the claim. (*Id.* at pp. 437-438.)

The breach of contract cause of action in *Fidelity & Deposit* was found to have accrued on or before the date of termination (and not on the termination date, as Security Paving maintains) because: (1) the State was alleged to have breached the contract prior

12

to termination; (2) the breaches were separate from the contractor's claim before the state highway engineer; and (3) the applicable limitations period, Government Code section 16044, is "jurisdictional in nature and must be strictly complied with." (*Fidelity & Deposit, supra,* 161 Cal.App.2d at pp. 436-437.) None of these circumstances are present here.

Unlike *Fidelity & Deposit*, the contract here—the 06 subcontract—was only alleged to have been breached *after* the date of termination. (Cf. *Fidelity & Deposit, supra,* 161 Cal.App.2d at p. 437.) Unlike *Fidelity & Deposit*, Security Paving was not alleged to have interfered with Camrock's ability to perform, and Camrock does not appear to have considered the 06 subcontract to have been breached prior to termination. (*Id.* at p. 433.) Unlike *Fidelity & Deposit,* we are concerned here with an ordinary statute of limitations, and not a jurisdictional one. (*Id.* at pp. 437-438.) Security Paving's reliance on *Fidelity & Deposit* is unavailing.

Security Paving argues in the alternative that the cause of action for breach of the 06 subcontract could have accrued on February 16, 2012, (when Caltrans granted its request to substitute Camrock) or March 2, 2012, (when Camrock submitted its final invoice for the 06 Project). Security Paving does not suggest that either of these dates are keyed to the timing of its obligation to pay Camrock, or the breach thereof. As far as we can tell, they are no more relevant to the alleged breach than the termination date, and equally insufficient to satisfy Security Paving's burden here.

Security Paving fails to show the evidence compels a finding in its favor that the cause of action for breach of the 06 subcontract accrued on the termination date as a matter of law. (*Atkins v. City of Los Angeles, supra,* 8 Cal.App.5th at p. 734.) Accordingly, Security Paving fails to show the trial court erred in finding Camrock's cause of action for breach of the 06 subcontract was timely.

## 2. *The 07 Subcontract*

The trial court found Camrock's cause of action for breach of the unsigned 07 subcontract and quantum meruit accrued on October 14, 2014, the same as the cause of action for breach of the 06 subcontract. Security Paving argues with some force that the trial court's reasoning was flawed, because October 14, 2014, was the date Caltrans made its final payment with respect to the 06 subcontract. That payment, Security Paving says, had nothing to do with Camrock's cause of action for breach of the 07 subcontract. Security Paving also argues, again with some justification, that the trial court's statement of decision fails to make findings as to the material terms of the unsigned 07 subcontract, such as whether, and to what extent, they track the terms of the 06 subcontract. These arguments, whatever their merits, nevertheless fall short of satisfying Security Paving's burden on appeal.

A cause of action for breach of an oral contract accrues at the time of the breach, i.e., when the party charged with the duty to perform under the contract fails to perform. (*Cochran v. Cochran, supra,* 56 Cal.App.4th at p. 1124.) A cause of action for quantum meruit accrues when a party knows or should know the facts essential to the claim. (*Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Ins. Co., supra,* 2 Cal.App.5th at p. 1223 [statute of limitations for physician's claims in quantum meruit against health insurers began to run only when physician received notice that claims were unequivocally denied].) "Where services are provided with the understanding that payment for those services will be made at some time after the termination of those services or upon some contingency, the statute of limitations does not begin to run until that time arrives or contingency occurs." (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 455.)

Security Paving argues the cause of action for breach of the unsigned 07 subcontract and quantum meruit accrued on or before March 15, 2012, when Camrock filed a stop payment notice with Caltrans. A stop payment notice notifies the project

14

owner (here, Caltrans) to withhold funds due to the prime contractor (here, Security Paving) sufficient to satisfy the amount of the stop notice claim, plus reasonable litigation costs. (Civ. Code, § 9358; *Crosno Construction, Inc. v. Travelers Casualty & Surety Company of America* (2020) 47 Cal.App.5th 940, 950.) Evidence that Camrock filed a stop notice claim with Caltrans on March 15, 2012, does not compel a finding as a matter of law that Security Paving breached the unsigned 07 subcontract or unequivocally denied Camrock's demand for payment on that date. It merely shows that Camrock acted to preserve its rights to funds that Security Paving might receive from Caltrans at some future date. (Civ. Code, § 9358, subd. (a) ["The public entity shall, on receipt of a stop payment notice, withhold from the direct contractor sufficient funds due or to become due to the direct contractor to pay the claim stated in the stop payment notice"].) That Camrock took steps to protect its interests does not amount to evidence " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding" ' " that the statute of limitations was triggered. (*Grand Ice Cream, Inc. v. County of Kern, supra,* 218 Cal.App.4th at p. 838.) We therefore conclude that Security Paving has again failed to carry its formidable burden. (*Atkins v. City of Los Angeles, supra,* 8 Cal.App.5th at p. 734.)[6] Accordingly, Security Paving fails to show the trial court erred in finding Camrock's cause of action for breach of the unsigned 07 subcontract or quantum meruit was timely.

B.     *Damages*

Security Paving next challenges the trial court's award of compensatory damages for the 06 Project.[7] The trial court found Camrock's damages were $560,959, less total

___

[6] Having done so, we deem it unnecessary to consider Security Paving's challenges to the sufficiency of the evidence supporting the trial court's alternate ruling that Security Paving was estopped from asserting the statute of limitations or waived the defense.

[7] Security Paving does not challenge the award for the 07 Project.

15

offsets in the amount of $242,604.[8]  Camrock was thus entitled to a net award of $318,355 for the 06 Project.  The net award included: (1) $258,700 for four line items in the 06 subcontract (line item numbers 7, 20, 21 and 22); (2) $45,920 for change order no. 1; (3) $45,430 for change order no. 2; (4) $64,800 for extra traffic control expenses; and (5) $146,108 for extra work caused by unforeseen rocks and "out of spec" posts.  Security Paving challenges each of these elements of the net award as unsupported by substantial evidence and, therefore, excessive.

Security Paving's challenge to the sufficiency of the evidence in support of the damage award is governed by the substantial evidence standard of review.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  Whether a plaintiff "is entitled to a particular measure of damages is a question of law subject to de novo review. [Citations.]  The amount of damages, on the other hand, is a fact question committed to the discretion of the trial judge on a motion for new trial; an award of damages will not be disturbed if it is supported by substantial evidence." (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 691.)  "All presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule. . . . [¶] . . . [¶] . . . [We] do not reassess the credibility of witnesses or reweigh the evidence.  To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor." (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.)  "The evidence is insufficient to support a damage award only when no reasonable interpretation of the

_____

[8] The offsets consist mainly of amounts paid to other subcontractors.

16

record supports the figure." (*Toscano v. Greene Music, supra,* 124 Cal.App.4th at p. 691.)

### 1. Line Items 7, 20, 21, and 22

As noted, the trial court awarded $258,700 for line items 7, 20, 21, and 22. Security Paving challenges this part of the award on the ground that Camrock's final invoice for the 06 Project sought only $243,300 for the same line items, and Caltrans approved only $187,912. Security Paving's challenge to the sufficiency of the evidence lacks merit.

Line item 7 called for Camrock to install 12,400 linear feet of metal beam guardrail for $15 per linear foot, or $186,000. The trial court awarded the full amount. Security Paving observes that Camrock's final invoice showed that only 12,000 linear feet had been installed, and Caltrans approved only 9,647 linear feet. However, the trial court heard evidence that Camrock completed the entire line item (all 12,400 linear feet). The trial court also heard evidence that Camrock's project engineer, George Njenge, was suffering from health problems at the time the final invoice was prepared, resulting in omissions and inaccuracies. The trial court also heard evidence that Security Paving only billed Caltrans for 9,647 linear feet and failed to bill the rest. The trial court could reasonably rely on this evidence in awarding the full amount for line item 7.

Line item 20 called for Camrock to install 15 transition railings (Type WB), at $3,500 each, for a total cost of $52,500. The trial court found there was "no dispute" that Camrock installed 8 transition railings and awarded $28,000 for line item 20 (8 x $3,500 = $28,000). Security Paving does not dispute that Camrock actually installed 8 transition railings, but takes issue with discrepancies in the number of transition railings appearing on Camrock's final invoice (15), and the number approved by Caltrans (5). But these discrepancies do not establish any insufficiency of the evidence to support the award. As noted, the trial heard evidence that Camrock experienced problems with the preparation of the final invoice. The trial court also received evidence that Security Paving was paid

17

for all of the transition railings by Caltrans. The trial court was in the best position to reconcile these amounts and could reasonably determine that Camrock was entitled to payment for 8 of 15 transition railings.

Line item 21 called for Camrock to install nine end anchor assemblies (Type SFT) for $750 each. The trial court found Camrock installed two end anchor assemblies and awarded $1,500 for line item 21 (2 x $750 = $1,500). Security Paving observes Camrock's final invoice showed that only one end anchor assembly had been installed, and Caltrans approved no end anchor assemblies. However, the trial court heard evidence that Camrock actually installed two end anchor assemblies but failed to update the invoice. The trial court also heard evidence that Security Paving failed to bill Caltrans for the end anchor assemblies. The trial court was entitled to rely on this evidence.

Line item 22 called for Camrock to install 24 alternative flared terminal systems, for $2,700 each, for a total cost of $64,800. The trial court found that Camrock installed 16 alternative flared terminal systems and awarded $43,200 for line item 22 (16 x $2,700 = $43,200). Security Paving does not challenge the trial court's determination that Camrock actually installed 16 alternative flared terminal systems. Instead, Security Paving observes Camrock's final invoice showed that only eight such systems had been installed. Again, the trial court was in the best position to resolve any discrepancies between Camrock's final invoice and evidence concerning the amount of work actually performed. We decline Security Paving's invitation to second guess the trial court's findings.

### 2. Change Orders

Security Paving next challenges the award of compensatory damages for change order nos. 1 and 2. These challenges lack merit.

Change order no. 1 called for Camrock to replace damaged metal beam guard railings along a two mile stretch of highway for $28 per linear foot. The trial court found

18

Camrock repaired 1,640 linear feet of guardrail and was entitled to $45,920 for change order no. 1 (1,640 x $28 = $45,920). Security Paving argues the award was excessive because Caltrans never approved more than 91 linear feet of guardrail repair. However, the trial court heard evidence that Camrock performed the work and billed Security Paving for it. Security Paving, for its part, failed to present evidence that it submitted the bill to Caltrans. Substantial evidence supports the award for change order no. 1.

Change order no. 2 called for Camrock to install 11 end treatment sections. The trial court found Camrock performed the work and was entitled to $45,430. The trial court found support for the award in progress reports known as daily extra work reports. Security Paving argues the trial court could not reasonably rely on the daily extra work reports because they failed to comply with certain cost accounting and recordkeeping provisions in the 06 subcontract. Security Paving's argument goes to the weight of the evidence, rather than its sufficiency. Again, we decline to second guess the trial court's evaluation of the evidence.

3.      *Extra Work*

Finally, Security Paving challenges the $64,800 award for extra traffic control expenses, and the $146,108 for extra work caused by unforeseen rocks and "out of spec" posts. As before, Security Paving argues the awards were not supported by substantial evidence because Camrock failed to produce the detailed cost accounting records purportedly required by the 06 subcontract. These arguments fail.

The parties originally contemplated that Security Paving would provide traffic control for the 06 Project. In the event that Camrock provided traffic control, the 06 subcontract contemplated an additional charge of $900 per lane, per day. The trial court found Camrock provided traffic control for two lanes of highway for a total of 36 days. Accordingly, the trial court awarded $64,800 for extra traffic control expenses (2 x $900 x 36 = $64,800).

Security Paving raises numerous objections to the award for extra traffic control expenses. Security Paving objects that the award was not supported by the detailed cost accounting records purportedly required by the 06 subcontract. Security Paving further objects that Camrock's records do not identify which employees were involved in traffic control on which days, and whether they had any other duties on those days. Security Paving further objects that extra traffic control exceeding 20 days necessitated another change order. Security Paving further objects that Camrock would not have provided traffic control for more than one lane of highway, because doing so would have involved shutting down the highway altogether. However, Njenge testified that Camrock provided 36 days of extra traffic control, for two lanes of highway. The trial court found Njenge's testimony to be credible. Nothing more was required. (*Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 257 ["under California law, the testimony of a single witness, even a party, may alone constitute substantial evidence"].)

Security Paving also challenges the trial court's award for extra work caused by rocks and "out of spec" posts. The trial court found Camrock spent an extra 36 days on the 06 Project to remove "out of spec" posts and install new posts by drilling through subsurface rocks. The trial court awarded $146,108 for the extra work. The award was supported by Njenge's testimony and an "extra work submittal" indicating the cost of the extra work.

Security Paving objects that the award is not supported by the detailed cost accounting records purportedly required by the 06 subcontract. Security Paving further objects that the "extra work submittal" was inconsistent with Camrock's final invoice and payroll records. Security Paving further objects that Camrock's estimate at trial was inconsistent with an earlier estimate made in its verified discovery responses. Again, these arguments amount to an invitation to reweigh the evidence, which we cannot do. The trial court reasonably rely on Njenge's testimony in determining the amount of the extra work element of the award. (*Chase v. Wizmann, supra*, 71 Cal.App.5th at p. 257.)

20

## III.  DISPOSITION

The judgment is affirmed.  Camrock Co., Inc. shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)  & (2).)

/S/

---
RENNER, J.

We concur:

/S/

---
HULL, Acting P. J.

/S/

---
DUARTE, J.